## E. J. Wilber et al.
### v.
## Tjestolf Torgerson.

*Life Insurance—Bill to wind up Mutual Benefit Association—Cross-Bill—Application of Reserve Fund—Trust Purpose—Advances of Directors—Jurisdiction.*

Upon a bill filed to wind up a mutual benefit association and distribute its assets, and a cross-bill claiming said assets on a death claim against the association, it is *held:* That the fund was a trust fund for the payment of mortuary benefits; that, as there was a trust purpose to which it could be applied, the directors could not apply such fund to the payment of advances made by themselves to discharge a prior death claim for which they might have made an assessment; that their advances made them only ordinary creditors; that the claim of the cross-complainant was not premature, the bill being to wind up the corporation; and that the court below had full jurisdiction of the entire subject-matter.

[Opinion filed December 7, 1887.]

Appeal from the Superior Court of Cook County; the Hon. Henry M. Shepard, Judge, presiding.

Messrs. Seth F. Crews and Wilber, Eldridge & Smith, for appellants.

Messrs. BLUM & BLUM, for appellee.

MORAN, P. J.   Appellants were directors of the Douglass Life Association, a corporation organized under the act of the Legislature providing for the organization and management of corporations, for the purpose of furnishing benefits on the assessment plan to the representatives of the deceased members, in force July 1, 1883.   The directors made a faithful effort to build up the association, and advanced their own means in the payment of death claims and for expenses of the association, but finally recommended the re-insurance of the members in another association, *i. e.,* the Mutual Life Association, and a bill was filed by the corporation and the directors to wind up the Douglass Life Association.

Halvordine Torgerson was a member of the last named association, and subsequently to the filing of said bill to wind up the association she died, and appellee, her husband, filed a cross-bill in the said suit, alleging the membership of his said wife in the association, that she was unable to re-insure in the Mutual Life Association because at the time she received notice of the action of the directors she was sick of a disease from which she afterward died, and claiming there was due from the association eighty per cent. of the amount which could be collected from the certificates in force, not to exceed $1,000, and alleging that the association had but little assets and was about to make an assessment upon the certificate holders to pay two other death claims, and would make no provision to pay appellee, and praying for an order directing an assessment to pay his claim.

Afterwards appellee amended his cross-bill by alleging that all other claims except his had been paid, and all other certificates except his had been surrendered, and that there remained in the reserve fund of said association, $460.20, which was held by the association as a trust fund for the payment of his claim, and asking that said money be decreed to him.   This cross-bill was answered by appellants and the case came on for hearing upon a stipulation as to the facts, from which it appears that the association had paid in all, during its existence, five

death claims; that from an assessment made to pay the death claim of one Rankin there resulted an excess of $298.13, and said excess, together with $1,058.51, which latter sum was advanced by the directors from their own money, was paid to settle the death claim of one Pierce.

That said sum of $1,058.51 was advanced by the directors from their own money in order to avoid making an assessment for the said Pierce death claim at that time.

That when the resolution was passed to wind up the corporation there was in the reserve fund the sum of $518.68, and that said sum was applied in payment to the directors upon the amount which they had advanced to the death fund, and that there was still due the directors something over $500. It further appears that said Halvordine Torgerson, deceased, paid all assessments that were imposed by said corporation after the issue to her of her certificate. The certificate issued to her provided, among other things, that within sixty days after the receipt of evidence by the association, of her death, there should be payable to her husband, if living, eighty per cent. of the amount produced by one assessment and not to exceed $1,000, payable from the death fund of the association. And no claim should be otherwise due or payable except from the reserve fund as hereinafter provided. It further provided that twenty per cent. of the receipts from assessments shall be securely invested in United States, State, county, city or other first class convertible bonds or stock, and such funds when so set apart shall belong to said association, and shall be used only for mortuary benefits without assessments, and to protect the non-forfeitable feature of the association. The court found that appellee's was the only outstanding claim against the association on account of death loss, and that there was in the hands of the directors $518.68, belonging to the reserve fund, and which was realized from assessments for death losses, and decreed the defendants to pay said sum to appellee.

We think this action of the court was correct. It was the duty of the directors to make an assessment upon the members to pay the death claim of Pierce, and if, instead of doing

so, they saw fit to advance their own money to discharge said claim, they did not thereby gain a right to appropriate the reserve fund, in payment to themselves of such advance, so long as there was any certificate holder who had the right to have such reserve fund paid out to him as a mortuary benefit.

By force of the statute, Sec. 129, Chap. 73, Starr & C. Ill. Stat., and under the terms of the certificates which the association issued, such reserve fund was a trust fund to be used only for mortuary benefits, without assessments, or applied otherwise for the promotion of the object for which, by the by-laws, it was set apart. The advance of the directors made them only ordinary creditors and the trust fund could not be used to pay such debts, if there were trust purposes to which it could be applied. No doubt the act of the directors in advancing the money was in good faith, and done for what they regarded as the best interest of the association, but the good faith of their act in advancing the money did not take them out of the class of ordinary creditors. The members of those holding death claims have the first right to be paid out of the reserve fund when the association is not in a condition to pay their claims by a regular assessment.

The objection that appellee's claim was premature, as the association would have sixty days after notice of death to pay it, is not in our opinion sustainable. The filing of a bill to wind up the corporation, is an invitation to all persons to present their claims against it, and claims not due at law will be accelerated so as to share in the assets under such circumstances.

It would be flagrantly unjust for the court to proceed to wind up a corporation and distribute its assets, part of which are trust funds, and leave a just claim entitled to have such funds appropriated to its discharge, unpaid, because if the association was continuing in business, it could not be sued thereon at law till after the lapse of a given number of days.

The original bill was filed to wind up the association and distribute its assets, and appellee had an interest in the subject-matter of the proceeding and filed his cross-bill for a proper purpose, to wit, to prevent the misappropriation of a trust

fund. The court had full jurisdiction of the whole matter and a right to do complete justice by ordering the fund paid to appellee.

The decree of the Superior Court must be affirmed.

*Decree affirmed.*