INSURANCE COMMISSIONER, in equity,

*vs.*

PROVIDENT AID SOCIETY,

BAY STATE BENEFICIARY ASSOCIATION, claimant.

Cumberland.     Opinion December 28, 1896.

*Assessment Insurance Company. Mortuary Fund. Reinsurance. R. S., c. 49,
§ 67; Stat. 1889, c. 237; Priv. Laws, 1885, c. 505; 1887, c. 184;
1889, c. 382; 1893, c. 387.*

The mortuary fund at the date of the transfer and reinsurance of the risks of a domestic life insurance company conducted on the assessment plan, under the laws of Maine, is a trust security for all its members; and should be apportioned equitably to secure protection to all.

Upon a receiver's bill it appeared that the defendant had previously transferred its risks and assets to another company, and that only a part of its members had assented and taken certificates in the latter company, which claimed the entire mortuary fund. *Held;* that the agreement to reinsure became a contract with such members only as consented to the change and accepted the liability of the new, in lieu of the old, company.

*Also;* that the rights of the parties in this case are to be determined by the charter of the company and R. S., c. 49, § 67; and not by Stat. of 1889, c. 237.

The court states the proportions of the division of the fund between the two companies.

Equity requires that the distribution of the balance of this fund to members of the defendant company, and who did not reinsure, should be in proportion to the assessments paid. To accomplish exact equity, *held;* that the last assessment paid by each member should be returned to him, if the funds are sufficient; and if not, the ratable share, based upon the amount of each assessment. The balance, if any, should be applied to the next preceding assessment in the same ratio, and so continued until the fund is exhausted.

ON REPORT.

Bill in equity, heard on bill, answer, decree appointing receiver and master, master's special report and receiver's report.

The bill was filed by the insurance commissioner in this court, in Cumberland County, and prayed for an injunction and the appointment of a receiver.

After the appointment of a master, the Bay State Association filed with him various claims to the funds of the Provident Aid; among them the following which he reported specially to the law court:—1.   Claim to the entire mortuary fund, including the amount deposited with the state treasurer, by virtue of a contract made in July, 1895.   2.   If not to the whole of said fund, at least to that proportion of the same to which the members would be entitled who had taken out new policies in the Bay State.

The case is stated in the opinion.

*L. C. Cornish,* for Receiver.

The statute of 1889 did not authorize the transfer of the mortuary fund and the contract for its transfer is ultra vires and void.

*Lucas* v. *White Line Transfer Co.,* 70 Ia. 542, (s. c. 59 Am. Rep. 449); *Davis* v. *Old Colony R. R. Co.,* 131 Mass. 258, (s. c. 41 Am. Rep. 221); *Twiss* v. *Guaranty Life Ass'n,* 87 Ia. 733, (s. c. 43 Am. State Rep. 418); *N. O. J. & G. N. R. R. R. Co.* v. *Harris,* 27 Miss. 517, holding:

(1.)   An amendment to the charter of a corporation is absolutely void unless accepted by all the stockholders of the corporation:

(2.)   A transfer of all the rights and property of a corporation to another corporation authorized by the legislature, and assented to by less than all the stockholders of the transferring company, is void, and may be repudiated by the transferring company, although the statute authorizing the transfer provides that the assent of the holders of a majority of the stock of the transferring company shall be sufficient, and such assent is obtained.

This reserve or mortuary fund which the Bay State now claims, is in reality a trust fund, made so by the contract between the Provident Aid and its certificate holders, toward the formation of which each certificate holder has contributed his part and in which each certificate holder has a vested interest so long as he keeps his assessments paid and is in good standing in the company.   This

interest in the trust fund is one that cannot be taken away from a beneficiary, even by a majority vote, or a two-thirds vote. The courts are very strict in the construction of trusts and will not allow any disposition of a trust fund impairing the obligation of the contract of the members contributing towards said fund. *Carey Library* v. *Bliss,* 151 Mass. 364; *American Legion of Honor* v. *Smith,* 45 N. J. Eq. 466; *Same* v. *Perry,* 140 Mass. 580; *Elsey* v. *Odd Fellows' Mutual Relief Ass'n,* 142 Mass. 224; *Tyler* v. *Same,* 145 Mass. 134; *Skillings* v. *Mass. Benefit Ass'n,* 146 Mass. 134; *Mass. Order of Foresters* v. *Callahan,* 146 Mass. 391;— Morawetz, Priv. Corp. §§ 413–433.

The principle of subrogation can apply only to such members of the Provident Aid as actually accepted the Bay State policies.

*Clarence Hale,* for Bay State Ben. Assoc.

1. The contract of the Bay State Beneficiary Association and the Provident Aid Society should be sustained by this court, and all the mortuary funds of the society, as set forth in the answer, should be decreed to pass to the Bay State with all other assets under said contract.

The contract of reinsurance effected a complete and actual reinsurance of all members of the Provident Aid with the Bay State. *Com.* v. *Weatherbee,* 105 Mass. 160; May, Ins. § 14; *Taylor* v. *Ins. Co.,* 9 How. 390; *Com. M. Ins. Co.* v. *Union Ins. Co.,* 19 How. 318; *Blanchard* v. *Waite,* 28 Maine, 51; 11 Am. and Eng. Enc. p. 280, and cases.

The contract is in pursuance of the charter of the Provident Aid and of its implied contract with its policy holders.

The funds which were placed on deposit in the state treasury are general funds of the Provident Aid and pass under this contract, it being the clear intention of the charter not to impose such a trusteeship upon the state treasurer as to prevent the passage of the funds.

The clear intention of the legislature under the charter was to make the state treasury a repository of funds, just the same as it might make a bank a repository. It makes the State the repos-

itory because the State is the safest institution that can be found.

If the legislature had intended to make the State more than a mere repository, and especially, if it had intended to make the State a technical trustee, it would not have given the power which is given in § 4, of the charter, viz., "to reduce the number or amount of assessments upon members, such part of the reserve fund may be applied to payment of benefits as deemed advisable by the directors."

Clearly, the directors are here given the discretionary power, but no such power is lodged with the state treasurer. It is clear that if the legislature had intended the State, or the state treasurer, to act as a technical trustee to have charge of the funds, it would not have given the powers to the directors of the Provident Aid which the charter gives. By § 4 of the charter; "The directors may from time to time withdraw from the reserve fund or surplus fund such amounts as may be required to comply with the contracts between the society and its members, and apply said amounts in payment of claims arising under said contracts."

Clearly, if the legislature had intended to make the treasurer of the State, or the State itself, a trustee for the policy holders and reposed in the State, or the state treasurer, the power of a trustee and imposed the duties of a trustee, it would not, at the same time have given the directors full power to withdraw a part of this reserve fund at any time. The legislature could not have intended these inconsistent things. 27 Am. & Eng. Enc., p. 107, and cases; *Ins. Com.* v. *Accident Assoc.*, 86 Maine, p. 231. The State not capable of taking as trustee or managing agent. *Levy* v. *Levy*, 33 N. Y. p. 123 ; *Cook* v. *Warner*, 56 Conn. 234 ; *Sperry's Appeal*, 71 Pa. St. p. 11 ; *Gardner* v. *Pollard*, 10 Bosw. p. 691. No trust between the parties by virtue of the policies. *Taylor* v. *Ins. Co.*, 59 How. Pr. Rep. p. 468 ; Angell and Ames, Corp. § 313, and cases ; 77 Am. & Eng. Enc. p. 348.

If the mortuary funds which were placed on deposit with the state treasurer should be held to be in any sense trust funds, even then, they were transferred under this contract and should pass from the Provident Aid to the Bay State subject to the original

trust which remains attached to such funds, such trust being merely to keep the funds safely and to have them ready to pay death claims.   Cooke, Life Ins. § 4; 4 Am. Eng. & Enc. p. 272, note and cases; *Goodrich & Hicks' Appeal*, 109 Pa. St. 523; Beach, Priv. Corp. § 342, and cases; *P. W. & B. R. R.* v. *Moreland*, 10 How. 376.

After the Bay State has paid the accrued mortuary claims upon accrued certificates, there will be no balance left from the mortuary funds for certificate holders.

The Bay State might compel the state treasurer by suit against the Provident Aid to apply said fund to the satisfaction of a judgment obtained in the name of a beneficiary of any deceased policy holder; or might compel a receiver to so apply, he having received the funds under decree of this court.

Under section four of the charter, in case of a judgment against the Provident Aid, the treasurer of State "may apply said fund to the satisfaction of said judgment."   Under the rules of interpretation in this State, the word "may" in the statute is to be construed "must" or "shall" when the public interest or rights are concerned or third persons have a claim *de jure* that the power shall be exercised:   *Monmouth* v. *Leeds*, 76 Maine, p. 31; *Lowe* v. *Dunham*, 61 Maine, 569.

Under the general principle of equity the mortuary fund should pass with the other assets to the claimant, the Bay State, under its contract.   Thomp. Corp. § 343.

If our former contention should not be sustained, then, in any event, the Bay State has been subrogated to the interest of all the members of the Provident Aid who paid the assessment due October first, and continued their membership in the Bay State; and such association as the equitable assignee of each member so having insured, under the ordinary rules of equitable assignment, is entitled to the pro rata amount of said mortuary fund which would have gone to all such insured members.

*North British Co.* v. *London L. & G. Co.*, 5 Ch. D., 516; *Darrell* v. *Tibbetts*, 5 Q. B. D., 560; Rapalje Law Dict., Insurance, Nature of Indemnity and Subrogation; 2 Beach, Law of Ins.

Chap. 30, title Subrogation; *Rowlett* v. *Greve's Syndics*, 8 Martin, 483, (13 Am. Dec., p. 296, note p. 297.)

*R. I. Thompson*, for Prov. Aid Society.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, STROUT, JJ.

STROUT, J.   When this bill was filed, October 18, 1895, the defendant company had on deposit with the state treasurer, securities of the par value of seven thousand dollars, and on deposit in Portland Trust Company three thousand fifty-one dollars and sixty cents, and an unliquidated balance in the hands of B. N. Johnson.   All of these funds belonged to the mortuary fund of the Society, and were charged with a trust for the security of its certificate holders.

In August, 1895, and before the filing of this bill, the Provident Aid made a contract with the Bay State Beneficiary Association of Massachusetts, by the terms of which the Provident Aid undertook to transfer to the Bay State all its risks, and all of its funds, including the mortuary fund; and the Bay State agreed to assume the liability of the Provident Aid upon its outstanding certificates then in force, and reinsure its members.   This contract was approved by a two-thirds vote of those present and voting at a meeting of the insured in the Provident Aid, called to consider the same, on July 30, 1895, in accordance with § 5 of c. 237 of the laws of 1889.   Thirty-eight voted to approve the contract and six voted against it.   Although the contract bound the Bay State to reinsure all members of the Provident Aid who so desired, it became a contract only with such members as consented to the change, and accepted the liability of the Bay State in lieu of that of the Provident Aid.   Those holding certificates in the Provident Aid, and not electing to accept the contract with the Bay State, had the right to retain their certificates in the Provident Aid, and rely upon its liability.   The master has found that eight hundred and fifty-five members of the Provident Aid, accepted insurance in the Bay State, and paid to it the assessment due October 1, 1895 ;

and that six hundred and seventeen members of the Provident Aid did not accept insurance in the Bay State, nor pay the assessment due October 1, 1895, to that company, but retained their standing in the Provident Aid. He has also found that the amount of insurance held in the Provident Aid by the eight hundred and fifty-five members who went into the Bay State, was $2,404,500, but the Bay State reinsured these for $2,328,500 only; and the amount held by the six hundred and seventeen members who did not go into the Bay State, was $1,635,500. The mortuary fund, being a trust security at the date of the contract of reinsurance for the entire fourteen hundred and seventy-two members of the Provident Aid, should now be apportioned equitably to secure protection to all. Of the amount of the mortuary fund which shall remain when final decree shall be entered, after payment of all death losses accrued before the filing of this bill and the expenses of this suit, there should be paid to the Bay State as a trust security for the eight hundred and fifty-five members of the Provident Aid reinsured by it, that proportion which the $2,328,500 of insurance of the eight hundred and fifty-five members who have gone into the Bay State, bears to the $1,635,500 of insurance of the six hundred and seventeen members who did not go into the Bay State.

The amount that will remain, after this payment to the Bay State, the Provident Aid having ceased business, belongs to the members of the Provident Aid who held certificates upon which all assessments had been paid.

The bill was amended, so that the rights of the parties are to be determined by the provisions of the charter of the company, § 8, and R. S., c. 49, § 67; and not by c. 237 of the laws of 1889. The funds are to be paid over to the certificate holders ratably.

Equity requires that this distribution should be in proportion to the assessments paid by the members. As the amount of assessment depends upon the age of the insured, it is manifestly unjust that one should receive back as much as another member whose assessment for the same insurance was much larger. To accomplish exact equity, the last assessment paid by each member should

be returned to him, if the funds are sufficient; and if not, the ratable share, based upon the amount of each. assessment. If the funds are sufficient to pay this assessment in full, and leave a balance, that balance should be applied to the next preceding assessment in the same ratio, and so continued till the fund is exhausted.

When the amount to be refunded to the members of the Provident Aid shall be ascertained, the master will determine and report the proper distribution upon the principle herein stated, and final decree will then be entered.

*Recommitted to the Master.*