BRENIZER v. ROYAL ARCANUM.

(Filed May 16, 1906).

*Garnishment — Practice — Issues—Foreign Insurance Companies—Service of Summons—Attachment—Assessments—Trust Fund—Jurisdiction—Mandamus—Injunction.*

1. Under Revisal, 781, the plaintiff in garnishment proceedings, upon the suggestion that he wishes to traverse the return of the garnishee is entitled, without any formal or verified statement, to have the issue tried by a jury.

2. The court correctly refused to vacate a warrant of attachment which was in all respects regular.

3. In an action against a foreign fraternal insurance society doing business in this State, service of summons on the commissioner of insurance brings the corporation into court.

4. Where in an action against a foreign fraternal insurance society, the funds in the hands of a collector were attached and the society claimed that such funds were held upon an express trust for the benefit of the widows and orphans of deceased members, and were not subject to attachment, the society was entitled to raise such question by motion to vacate the attachment.

5. Where the constitution of a foreign fraternal insurance society provided for the creation of a fund to be raised from assessments upon its members for the benefit of widows and orphans of deceased members, any money paid to such fund is impressed with the qualities of a trust for the special purposes expressed, and such fund in the hands of a local collector, which he was bound to pay over to the society's treasurer, is not subject to an attachment by a creditor of the society.

6. The courts of this State have no power to control by mandamus or injunction the supreme council of a foreign fraternal insurance society.

ACTION by A. G. Brenizer against Supreme Council of the Royal Arcanum, heard by *Judge Jas. L. Webb*, at the November Term, 1905, of the Superior Court of MECKLENBURG.

This was a motion to dissolve an attachment levied upon certain moneys in the hands of D. T. Johnson, collector of Raleigh Council of the Royal Arcanum. The facts appearing upon the record are as follows: Plaintiff A. G. Brenizer on the 31st day of October, 1905, instituted an action in the Superior Court of Mecklenburg County for the purpose of recovering the sum of $1,400, alleged to be due him by the Supreme Council of the Royal Arcanum. Summons was duly served on the insurance commissioner of North Carolina. The warrant of attachment was issued by the clerk of the Superior Court and was directed to the sheriff of Wake County commanding him to attach all the property of the defendant in said county. The clerk issued an order to the sheriff of Wake County commanding him to summon D. T. Johnson to appear and answer on oath concerning such moneys or property as he had in hand belonging to the defendant, etc. Upon service of the notice, said Johnson, upon oath, made return, saying: That he is a collector of Raleigh Council No. 551 of the Royal Arcanum, which is a subordinate council under the jurisdiction of the supreme council. That as such collector under the charter, constitution and laws of the Royal Arcanum as shown in the constitution thereof, it is his duty to receive and collect all moneys due by the members of his council for the widows' and orphans' benefit fund and to pay the same over to the treasurer of the subordinate council. It is the duty of the treasurer to keep a separate account of the widows' and orphans' benefit fund and not allow this fund to be used for any other pur-

pose and to transmit the money to the supreme council. As such collector, he had in his possession on November 1, 1905, the day the notice of attachment was served upon him, the sum of $861.34, which is to his credit, as collector, in bank. That this money was collected and received from the individual members of the said council, as assessment No. 350, for the widows' and orphans' benefit fund, and when collected should have been paid over to the treasurer of the said council, whose duty it is to transmit the same to the proper officer of the supreme council. That he had no other money or property of the supreme council; that all the money in his possession or on deposit made by him, was collected for the purpose of paying assessment No. 350 belonging to the general fund of Raleigh Council, not the property of, or in any way controlled by, the supreme council. This money is a part of the fund which, under the charter, constitution and laws of the defendant, the supreme council, and under the laws of Massachusetts, of which State defendant is a citizen, was raised for and is held as a trust fund to be paid out solely for death benefits, and neither affiant nor defendant nor any one else can divert the same to any other purposes. That he is advised that such sum is not liable to attachment at the hands of any one who has a supposed claim against the supreme council, not arising out of the death benefit. He refers to the provisions of the charter, constitution and rules of the Royal Arcanum, wherefore he asks that the attachment against him be vacated, etc.

Henry J. Young, treasurer of Raleigh Council, filed an affidavit stating that it was his duty to receive from the collector all the money paid to him for the council and to keep an account of the sum. That it is his duty to keep a separate account of the widows' and orphans' benefit fund and not to permit it to be used for any other purpose. That at the time the notice of attachment was served upon him, he had in his possession $333, which belonged to the subordinate

council, and that he had no funds belonging to the supreme council.

E. A. Skinner, of the State of New York, filed an affidavit stating that he was supreme treasurer of the Supreme Council of the Royal Arcanum; that he is the custodian of the funds of said corporation, etc. That according to the articles of incorporation of defendant, the laws of Massachusetts and the constitution and laws of the defendant, the said defendant has created and established a widows' and orphans' benefit fund out of which shall be paid to the wife, children and relatives of persons entitled thereto, the amounts of certificates issued to them by said council. The said widows' and orphans' benefit fund is collected and remitted to him as custodian thereof and payments therefrom made in accordance with the constitution and laws of said order. That none of the moneys contributed and paid to the widows' and orphans' benefit fund by the members of the various subordinate councils has ever been used for any other purpose than for the payment of death benefits and to establish what is known as the emergency fund, and that said moneys have been held sacred as a trust created by the articles of incorporation, the laws of Massachusetts and the constitution of the Royal Arcanum; that the funds which have been attached by process in this action were contributed to and paid by certain members to the collectors for the sole purpose of being transmitted before November 15, 1905, to this deponent as custodian of said fund, and to be used only in the payment of death benefits as hereinbefore stated and that none of such funds under the articles of incorporation, the laws of Massachusetts, etc., is liable for the payment of any other debt or debts of the supreme council, but is a trust fund as herein provided. There is a separate fund of the supreme council from which all expenses of whatever kind are paid.

W. O. Robson, of the State of Massachusetts, filed an affidavit stating that he was supreme secretary of the defendant;

that he knows of the constitution and laws thereof and of the laws of Massachusetts, under which the defendant is organized. That said defendant was authorized to and has established a widows' and orphans' benefit fund by requiring all the members of the various councils of the defendant corporation, wherever situated, to pay to the collectors of their respective subordinate councils, certain sums of money, prescribed in said laws, which, after a certain period of time, therein prescribed, become the property of the defendant corporation, and that, after the same comes into the possession of the supreme treasurer, it then becomes a part of the widows' and orphans' benefit fund, above referred to, and by the articles of incorporation, the laws of the State of Massachusetts and the constitution and laws aforesaid, are a trust fund to be used only as provided in said laws found in exhibit attached. That according to the laws of Massachusetts and the constitution, etc., the said widows' and orphans, benefit fund is a trust fund created and established solely for the purpose of paying therefrom, "on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding $3,000 to the wife, children, relatives, etc., as he may direct." That said trust funds have not been, nor does he believe they could be used for any other purpose whatsoever. That the funds which were attached in this action were paid by the members of the subordinate councils to the officers of said councils, as assessments due from such members to the widows' and orphans' benefit fund to be transmitted to the supreme treasurer, etc. A copy of the certificate issued to the plaintiff was attached to the record by which it appears that the Supreme Council of the Royal Arcanum promises to pay out of its widows' and orphans' benefit fund to the person named therein the sum of $3,000, etc. Certain portions of the constitution and laws of the said supreme council were in evidence in which the objects of the order

are stated, among others, to issue a widows' and orphans' benefit fund, from which the sum not exceeding $3,000 shall be paid to the wife, children, etc., of each member upon the conditions therein set out. It is also provided that upon application made and accepted by any person a certificate shall issue entitling the person named therein upon the death of the applicant to be paid from the widows' and orphans' fund the sum named not exceeding $3,000. A schedule of assessments is attached to the record, also certain portions of the statute in force in Massachusetts regulating the management of benefit societies.

The motion was based upon two grounds, the second being that the warrants of attachment and attempted service and levy thereof be adjudged void and vacated on the ground that the funds attempted to be garnisheed and attached are not subject to attachment or garnishment for the claim of the plaintiff.

The motion being denied, the defendant excepted and appealed.

*E. T. Cansler* and *Chase Brenizer* for the plaintiff.
*Tillett & Guthrie* and *F. H. Busbee & Son* for the defendant.

CONNOR, J., after stating the case: Plaintiff's counsel in their well prepared brief and able argument in this court, raise a question of practice, insisting that under the provisions of the statute, Rev., sec. 781, "When any garnishee makes such a statement of facts that the court cannot proceed to give judgment thereon, then the court shall order an issue to be made up which shall be tried by a jury and, on their verdict, judgment shall be rendered." It is clear that plaintiff, upon the suggestion that he wished to traverse the return, was entitled without any formal or verified statement to have the issue tried as directed by the statute. It seems,

however, that defendant made its motion upon the return and plaintiff thereupon made an issue of law, as upon a demurrer, admitting, for the purpose of the motion, the truth thereof. The appeal comes to us in that form and has been argued upon the merits. We concur with the plaintiff that His Honor correctly refused to vacate the warrant of attachment. It is in all respects regular and if so advised, the plaintiff may, upon his affidavit, have other warrants against any property which the defendant may have in this State. The service of summons on the commissioner of insurance brings the defendant corporation into court, and all such further proceedings may be had in the cause in ascertaining and declaring plaintiff's rights, as may be in accordance with the law upon the facts as found by the court or jury. Plaintiff suggests that the defendant corporation cannot raise the question whether, upon the return to the notice, the money in the hands of Mr. Johnson is liable to garnishment or attachment. That only the garnishee or collector can raise the question at this time, or until after judgment it is sought to have the funds applied to its discharge. We think that in view of the contention of the defendant corporation that it is entitled and that it is its duty to receive and hold this money upon an express trust, that it may, at this stage of the litigation, make such motions and pursue such course as may be proper to protect the fund. It is always the duty of a trustee to protect the trust property and for that purpose institute actions, intervene in actions pending, and in any other way, in accordance with orderly procedure, protect such property. Having disposed of these preliminary questions of practice, we are confronted with the real question in debate. Taking the return to be true, together with the affidavits filed in support thereof, is the money in the hands of Mr. Johnson, collector, subject to attachment for the claim of the plaintiff? The solution of this question depends upon the answer to the further question, whether the money col-

lected by him is impressed with an express trust.  The process with which we are dealing is rather an attachment than a garnishment.  The money held by Johnson is the property of defendant and not a debt due by Johnson, which is usually the subject of garnishment.  It is not material to discuss or attempt to distinguish the two kinds of process.  Johnson says that he is the treasurer of Raleigh Council, the members of which are assessed by the supreme council, monthly, for the amount fixed and that he collects such assessments for the widows' and orphans' benefit fund created by the council and held by it in special trust to pay to the wife, children, relatives of or persons dependent upon members holding certificates at their death.  That the amount in his hands, at the time of notice of attachment, was collected and received from the individual members of the said local council as assessment No. 350 for the widows' and orphans' benefit fund and should have been turned over to the treasurer of said council, whose duty it is to send the same to the treasurer of the supreme council for the purpose of holding same.  He says that he had no other money which is, or can be called, the property of the supreme council.  That this fund is, under the charter, constitution and laws of the supreme council and the laws of Massachusetts raised for and is held as trust fund to be paid out solely for death benefits.  The other affidavits and exhibits all tend to sustain the truth of the return.  The portions of the constitution, etc., in evidence declaring the objects of the order are consistent with the return.  In paragraph 5 it is expressly stated that one of the objects of the order is "To establish a widows' and orphans' benefit fund from which, on satisfactory evidence of the death of a member of the order  *  *  *  a sum not exceeding three thousand dollars shall be paid to the wife," etc.  The funds from which the payment of such benefits shall be made shall be derived only from assessments collected from the members, except as provided in sections eight, nine

and ten.  The fund from which the expenses shall be de-
frayed may be derived from a per capita tax, dues and ex-
pense assessments.  Provision is made for creating, from
the assessments, in excess of the current death losses, an
emergency fund, from which, if assessments are insufficient
to meet death losses, they may be paid.  The emergency fund
shall be used only for the death or disability benefits.  We
think it apparent from the portions of the charter, laws and
statutes quoted and others in the record that the assessments
received by Mr. Johnson, collector, are made and paid
for the purpose set out in his return.  It is his duty to pay
them over to the treasurer of Raleigh Council to be sent to
the supreme treasurer.  Mr. Robson says that he is the
supreme secretary and knows the method by which the
assessments are made, collected and remitted.  That after
receipt by the grand treasurer, the assessments become a
part of the widows' and orphans' benefit fund, all of which,
he says, is regulated by the charter, laws, etc., of the cor-
poration and the laws of Massachusetts.  The question is
of first impression in this State, but we find that in other
courts, the status of funds held by orders or societies of
the class to which defendant belongs has been considered.
"Whether a fund formed by the contributions of members of
a society has been impressed with a trust and so accepted, is
a question of fact always open to judicial enquiry, and
whether the alleged trustee be an individual, incorporated
or otherwise, no act, declaration or decision of such trustee
will prevent such enquiry.  If the terms of the alleged trust
are contained in an instrument of gift, that instrument will
be examined and the intentions of the donor carried into
execution.  If expressed in the articles of a voluntary society,
these articles will be carried into specific execution for the
purpose of enforcing the trust, and if in the fundamental
law, or in the ordinances and by-laws of a society, on the
faith of which contributions have been made, the court will

adopt the construction of the members and apply relief according to their own views of the law. An ordinance of a society, which provides for the creation of a fund for the benefit of the widows, orphans, heirs or designated beneficiaries of the members, and commits the administration of such fund to the officers of the society, impresses any money paid into such fund with the qualities of a trust for the special purposes expressed therein; and the fund thus formed can properly be applied only in that particular manner pointed out in such ordinance, which is in this regard to be treated as an express declaration of trust." Niblack Benefit Soc., 247.

Our statute, Rev., sec. 4790-98, recognizes the distinction between "assessment companies," "fraternal orders" and insurance companies. By section 4792 assessment companies are prohibited from issuing policies or transacting business not authorized by its charter. By section 4795, fraternal orders are defined bringing the defendant corporation within such definition, and providing "That such order, society or association paying death benefits may also create, maintain, apply or disburse among its membership a reserve or emergency fund as may be provided in its constitution or by-laws; but no profit or gain shall be added to the payments made by a member." Sec. 4796 provides that funds for such orders must be derived from assessments and dues. "Such societies or associations shall be governed by the laws of the State governing fraternal orders, and shall be exempt from the provisions of all general insurance laws of this State, and no law hereafter passed shall apply to such societies, unless fraternal orders be designated therein."

This general statement of the law is sustained by a number of decided cases—we find none to the contrary. In *Nat. Park Bank v. Clark,* 77 N. Y., Supp., 1089, the relative rights of members and creditors of an order of this character were involved and passed upon. An order or association,

in some respects similar to the defendant, chartered in Indiana, became insolvent and a receiver was appointed by the court in that State. The order had subordinate councils in New York, and they, in turn, established a grand council in that State. The supreme council maintained a general fund for the purpose of defraying its ordinary expenses, etc., and a relief fund for the benefit of members disabled, etc. The funds were derived from assessments of an amount fixed according to age, etc., paid by members of the subordinate councils and transmitted by them to the supreme council, 90 per cent of which went into the relief fund, and 10 per cent into the general fund. Certificates were issued to the members very similar in form and substance to that issued to plaintiff. No assessments were made for any particular claim. For the convenience of claimants, depositories of the relief fund were appointed, one of them being the National Park Bank. Several creditors attached the funds deposited therein. A receiver was appointed by the New York courts to protect the funds in that State for the benefit of claimants residing there. The question as to the rights of attaching creditors and the receiver came up before the Supreme Court. *Wright, J.*, said: "So we have a fund devoted by the law providing for its existence, and also by the subsequent agreement of every member of the order, to a certain definite purpose. It was paid by the members to the supreme council for that purpose, and it was hedged about by rigid provisions for its protection against diversion from that object by the supreme council or any other authority. The body of beneficiaries, entitled to this fund, was determined by the claims that were, from time to time, passed upon and allowed  *  * From the foregoing, it clearly appears that said fund was impressed with a trust for the purpose aforesaid." After discussing the rights of all claimants to an equitable distribution of the fund, it is said: "The counsel for the attaching creditors cite several cases for the purpose of endeavoring to

substantiate their claims to a preference by virtue of their liens of attachment; but those cases do not apply to a case like this, when the fund attached is a trust fund." The court directed the receiver appointed by the New York court, after paying the expenses of the receivership, to pay over the fund to the Indiana receiver to be administered in accordance with the terms of the trust. In *Knight Templars v. Vail,* 68 N. E. (Ill.), 1103, in discussing the status of the funds derived from assessments and set apart for a specific purpose, a distinction is drawn between such funds and those of the ordinary life insurance company, *Ricks, J.,* saying: "It may be observed that appellant is not an ordinary insurance company, which pays tribute to the State upon the theory that it reaps, from the business, pecuniary profit, but, on the contrary, its existence is only authorized upon the theory as the title of the act authorizing it provides that it was organized 'for the purpose of furnishing life indemnity or pecuniary benefits to widows, orphans, etc., to the members thereof.' In the eye of the law, the members and those bearing certain relations to them, are the beneficiaries of all the funds realized by such corporation, and not the corporation itself. The corporation stands but as a trustee handling the funds paid by the members and to be issued to them, and the beneficiaries authorized by the act, according to the plain restrictions provided by the act." The same view is taken in *Com. v. Eq. Ben. Asso.,* 18 Atl. Rep. (Penna.), 1112, wherein, after discussing the theory upon which insurance companies is based, it is said: "What is known as a 'beneficial association,' however, has a wholly different object and purpose in view. The great underlying purpose of the organization is not to indemnify or secure against loss. Its design is to accumulate a fund from the contribution of its members for beneficial or protective purposes, to be used in their own aid or relief in the misfortune of sickness, injury or death." In *Allen v. Thompson,* 56 S. W. (Ky.), 823, the question under consid-

eration is sharply presented.  Plaintiff borrowed from the
Granger's Mutual Benefit Society a sum of money, and se-
cured its payment by a mortgage.  The society, of which he
was a member, becoming insolvent, he sought to use, as a
counterclaim, the amount paid by way of assessments or the
cash value of his certificate.  The assessments were made for
and paid into the mortuary fund held by the society to pay
death claims of the members.  The court said: "These
monthly dues were a sum certain, payable every month, and
not contingent in any way upon the death of members, as
under the old policy.  Still the company had no assessments,
and no means of meeting this obligation, except from the mor-
tuary fund above referred, to.  Every member who took a
policy was compelled to know that his only reliance for the
payment of his policy in case of his death was the collection
of the dues of the members.  It was, therefore, strictly a
mutual company, and for this reason the funds of the two
classes were required to be kept separate, so that no part of
the funds of one class should be required to pay the losses of
the other.  Besides, the mortuary fund, by the express terms
of the charter, could be used only in the payment of death
claims or in resisting claims on the fund.  It was thus a
guaranty fund for the payment of death losses, and cannot be
appropriated to any other obligation so as to leave them un-
paid."  He was not permitted to set up his counterclaim.
In *Sherman v. Harbin,* 100 N. W. (Iowa), 623, the court,
in this connection, used the following language: "Such an
association acts as trustee in the collection of funds and their
distribution to the beneficiaries entitled to receive them."
The question, as it arose in that case, is discussed at length,
and the concluson reached in harmony with what we have
quoted from other courts.  *Ins. Com. v. Provident Aid Soc.,*
36 Atl., 627.  In *Wilber v. Torgerson,* 24 Ill. App., 119, it
appeared that the directors for the purpose of paying a death
loss, advanced the money from their personal funds.  There-

after they repaid themselves out of the reserve fund set apart to pay death losses, the amount so advanced. The association became insolvent. Plaintiff was entitled to be paid the amount due on a certificate issued to his wife. He insisted that the directors had no right to repay themselves out of the reserve fund, the amount so advanced. Upon appeal from a judgment against the directors, *Moran, P. J.,* said: "We think this action of the court was correct. It was the duty of the directors to make an assessment upon the members to pay the death claim and, if instead of doing so, they saw fit to advance their own money to discharge said claim, they did not thereby gain a right to appropriate the reserve fund in payment to themselves of such advance as long as there was any certificate holder who had the right to have such reserve fund paid out to him as a mortuary benefit * * * under the terms of the certificates which the association issued; such reserve fund was a trust fund to be used only for mortuary benefits, without assessments, or applied otherwise for the promotion of the objects, for which, by the by-laws, it was set apart. The advance of the directors made them only ordinary creditors, and the trust fund could not be used to pay such debt if there were trust purposes to which it could be applied." The relation which the members or holders of certificates issued by the Royal Arcanum hold to the order came under discussion in *Saunders v. Robinson,* 144 Mass., 306, in which it was held that the sum due the beneficiary named in the certificate was not subject to attachment or garnishment. *Devens, J.,* said: "An example of the whole system shows that the association was established, among other things, for the purpose of affording mutual aid to its members, and also for the purpose of establishing what is termed a widows' and orphans' benefit fund, for the payment of specified sums to the widows, orphans and other dependents of deceased members. It transacts its business mainly through the agency of grand councils composed from the subordinate councils in

each State, and through the agency of these subordinate councils, both of which councils operate under charters granted by the supreme councils, and in obedience with the rules prescribed in such charters." While not strictly analogous, we find in *Duke v. Fuller,* 9 N. H., 536 (32 Am. Dec., 392), an interesting discussion of the principle as involved in the charter, etc., of a lodge of Free Masons. This court held in *Lord v. Hardie,* 82 N. C., 241, that the communion service owned by the trustees of a church could not be sold under execution. *Smith, C. J.,* said: "It is thus apparent that the trustees hold the property vested in them by law, in their corporate capacity, for the exclusive use of the congregation, and under its direction and control." They are depositories of the naked, legal title. "An attaching creditor can acquire no greater interest in attached property than the defendant had at the time of the attachment." *Ward v. Waterman,* 85 Cal., 488. Whether we treat the funds collected by Mr. Johnson, collector, as the property of the corporation immediately upon its receipt by him or as the property of the members of Raleigh Council until transmitted is immaterial. If the first, it is impressed with an express trust, if the second, it cannot be attached for a debt of the Supreme Council of the Royal Arcanum. The results which would follow if a creditor of the supreme council could attach the assessments paid by members for the widows' and orphans' benefit fund would be disastrous to thousands of innocent people. To what extent the failure of the subordinate councils to forward the assessments, by reason of attachments served on them, would operate to cancel the certificates of its members, we need not inquire. If, however, we permitted the assessments to be diverted from the purposes for which they are paid, we would be powerless to protect the sufferers. We have no power to control by mandamus or injunction the supreme council. If the plaintiff shall establish his claim against the corporation, he will have final process against

any property it may have within this State. For such other property, he will be compelled to resort to the courts of Massachusetts. *Blackwell v. Mutual Reserve,* at this term.

After a careful examination of the authorities, we are of the opinion that the levy of the attachment on the funds in the hands of the officers of Raleigh Council should have been vacated and set aside.

Let this be certified to the Superior Court of Mecklenburg County.

Error.

CLARK, C. J., dissenting: The assessments are not for any particular loss, but to raise a fund to pay operating expenses and losses as they may occur. If a policy holder should die and payment be refused, surely his personal representative could attach this or any other property of the defendant which he might find in this State. He should not be driven to a distant forum to battle with the company in the courts of the State of its origin. This fund has not been segregated and applied to any one loss. The assessments are held in trust, it is true, to pay losses which may accrue, just as premiums are so held by "old line" companies. But in both cases the money is the property of the company *(Bragaw v. Supreme Lodge,* 128 N. C., 354), its general assets, and may be attached here and held to abide the judgment of our courts in payment of a death loss, whose payment out of the fund has been refused, or to pay a claim like the plaintiff's, which is in lieu of a death loss, being to recover back assessments paid into the fund by him by reason of the wrongful cancellation of his policy, or breach of contract under which he paid in said premiums. It is a trust fund for the payment of losses; it is necessarily a trust fund for the repayment of anything which has been paid into the fund by the plaintiff under an agreement which has been wrongfully repudiated by the defendant.