A. L. MOSES, SURVIVING PARTNER OF THE CO-PARTNERSHIP OF E. W. BARNARD AND A. L. MOSES, HERETOFORE CARRIED ON UNDER THE FIRM NAME AND STYLE OF E. W. BARNARD, *v.* ANTONE NOBRIGA.

No. 1261.

EXCEPTIONS FROM CIRCUIT COURT FOURTH CIRCUIT. HON. C. K. QUINN, JUDGE.

ARGUED MAY 12, 1920.                   DECIDED MAY 25, 1920.

COKE, C. J., KEMP, J., AND CIRCUIT JUDGE BANKS IN PLACE OF EDINGS, J., ABSENT.

TRIAL—*findings of fact—credibility of witnesses.*

Issues concerning the credibility of witnesses and the weight of the evidence are to be determined by the trial court and the findings cannot be disturbed if supported by evidence.

ATTACHMENT—*motion to dissolve—exemption of property levied on as ground.*

It is not a sufficient ground for dissolving a writ of attachment that the property levied upon is exempt from seizure under the writ.

OPINION OF THE COURT BY KEMP, J.

This cause comes here on defendant's bill of exceptions. The plaintiff brought his suit in assumpsit to recover of defendant $1475.76. The defendant answered by general denial and pleaded a set-off for the sum of $682.90. The plaintiff answering defendant's set-off entered a general denial and the additional defense of the statute of limitations. The complaint was filed June 21, 1918, and the set-off was filed October 31, 1918. At the trial (jury waived) the defendant admitted liability under the first count of plaintiff's declaration in the sum

of $1475.76 and the trial of defendant's set-off was had after which the circuit judge found against the defendant on all of his claim except two items aggregating $6.50. Judgment was thereupon entered in favor of plaintiff and against defendant in the sum of $1469.26, together with interest, costs and attorney's commissions. Before the trial the plaintiff procured a writ of attachment to issue in this action and caused the same to be levied upon the property of the defendant. The return of the officer levying said attachment shows that it was levied on the following described property of the defendant, to wit:

"All of the right, title and interest of the within named Antone Nobriga, defendant, in and to all of the said real property, to wit:

"1. All of that certain piece or parcel of land situated at Manowaiopae Homestead, District of North Hilo, County of Hawaii, known as lots No. 64 and 65 Manowaiopae Homestead Tract, and being more particularly described on Map 2555, known as Hokumahoe land, containing an area of 25.80 acres.

"2. One house lot No. 47, Kanowaiopae Homestead Tract.

"3. Two wooden frame building with iron roofing— one building containing six rooms and the other one room.

"4. One redwood water tank.

"5. All his interest in the growing crops on Lots No. 64 and 65 Manowaiopae Homestead Tract."

Before the trial the defendant moved that the writ of attachment be dissolved, the motion being in the following language:

"Comes now the defendant, Antone Nobriga, and moves the court that the writ of attachment issued out of this court and in this cause on February 4th, 1920, and levied upon the property of the defendant, as shown by the return of the officer levying said attachment, be dissolved and the same be declared to be of no force and

effect as against this defendant and the property of this defendant, upon the following grounds:

"I.   That no copy of the complaint and no copy of summons was served on defendant.

"II.   That the copy of the alleged bond in attachment shows that the sureties on the alleged attachment bond did not justify as by law required; that the alleged attachment bond has no surety thereon and that the purported signature of 'Home Insurance Company of Hawaii' to the said alleged bond does not purport to have been signed by any person having authority so to do, and that said bond is insufficient.

"III.   That the real property levied upon under said writ of attachment is not subject to levy of attachment or execution for the reason said real property is held by defendant under a special homestead agreement issued by authority of the commissioner of public lands of the Territory of Hawaii.

"IV.   That the two wooden frame buildings with iron roofing and the one redwood water tank levied upon under said attachment are a part of the real property held under said above referred to special agreement so issued, and are not liable to be taken on attachment or execution.

"V.   That the interest in the growing crop of cane so levied upon under said attachment is a part of the real property owned under said special homestead agreement and is not liable or subject to levy under attachment or execution.

"This motion is based upon all the records, files, and the return of the officers serving said attachment and upon oral testimony and evidence to be introduced upon the hearing hereof.

"Wherefore, defendant prays that said writ of attachment be dissolved and dismissed and held for naught, and be declared to be no lien on the defendant's property."

In support of this motion the defendant offered and there was received in evidence defendant's special homestead agreement No. 1083, dated December 20, 1913, covering lots Nos. 47, 64 and 65, government survey regis-

tered map No. 2555, situated at Manowaiopae, after which the plaintiff admitted that the tanks, houses and buildings named in the attachment are the same as specified in the special homestead agreement. The motion to dissolve the writ of attachment was denied.

To the ruling refusing to dissolve the writ of attachment as well as to the decision of the circuit judge finding against him on his set-off the defendant excepted and the bill of exceptions here presented challenges the correctness of these rulings.

Under his exception to the decision of the circuit judge against him on his set-off the defendant argues that the decision is contrary to the law, the evidence and the weight of the evidence. The testimony of the defendant in support of his set-off is to the effect that prior to the year 1912 he had been in the employ of the plaintiff for eighteen or twenty years; that he was employed at the landing at Laupahoehoe to receive and take charge of the freight landed there for the liquor house and store of the plaintiff and for such services he was to receive a wage of $20 per month; that from January 1 to June 30, 1912, he was employed in said work and that with the knowledge of plaintiff he employed other men to assist him and that he paid for such assistance during said six months the sum of $266.65; that in the month of June, 1912, he went to the plaintiff and took his books of account which he exhibited to plaintiff and asked to have the said account O. K.'d, which the plaintiff refused to do; that believing the plaintiff was only fooling with him he took his books and went away; that at another time, the exact date not being mentioned, he called upon the plaintiff and had with him $400 in cash which he proposed to pay upon his account provided the plaintiff would O. K. his claim, which the plaintiff refused to do. The defendant further

testified that during the months of July, August, September and October, 1912, he worked as yard boy in and about the premises of Mrs. Barnard at the request of the plaintiff and that he assumed that he would receive for such work $20 a month, the same amount of wages he had been receiving from plaintiff, although he admits that no wages were agreed upon, and also admits that when he first mentioned this item to Mr. Moses that he was informed that he would have to look to Mrs. Barnard for his payment. The defendant also testified that in December, 1914, his son used his (defendant's) horses and wagon for three days hauling freight from the landing for the plaintiff for which a charge of $22.75 was made, which was a reasonable charge; that in March, 1915, he furnished the plaintiff a bag of sweet potatoes for which he charged $5 and that his son Louis worked one day for the plaintiff, for which he charged the sum of $1.50. These last two items are admitted by the plaintiff and constitute the $6.50 which the circuit judge allowed as a set-off. Defendant's books of account in which he claims to have made entries of the sums paid his help on particular days, a total of which shows a payment of $266.65, were introduced in evidence. Defendant also gave the names of several of the men whom he claims to have employed and paid for assisting him in plaintiff's work at the landing and two of these men have testified that they did work at the landing under the supervision of the defendant and that defendant paid them for their work. S. Yamanaka, a witness for the defendant, testified that he began working for the plaintiff on November 20, 1911, and continued in the employ of the plaintiff for five years and four months and that for a period of about one year after he commenced work for the plaintiff the defendant Nobriga was working at the landing tending freight; that on several occasions

during said time when there would be a shortage of freight he would call upon the defendant to find the missing freight. The two witnesses who claim to have worked at the landing under the supervision of the defendant testified that at the time they worked at the landing the witness Yamanaka was in the employ of the plaintiff. Defendant's testimony is that none of these amounts claimed by him have been paid.

In opposition to this testimony of the defendant and his witnesses the plaintiff has testified that the defendant was not in his employ at any time during the year 1912 and was not authorized to expend any money ·for labor in his behalf; that during the year 1911 the defendant had an account with plaintiff which was settled up to March 31, 1912, said settlement being made July 30, 1912, by the payment of $86 in cash. The plaintiff also testified that during the months in 1912 when the defendant claims to have worked at the landing and employed others to assist him that he himself paid such employees as worked at the landing. The item of $22.75 for three days' hauling of freight from the landing was not called to the attention of the plaintiff while testifying and he made no specific denial of this item but he does testify that after the year 1911 the defendant was not at any time in his employ, and this item according to the defendant's statement was in the year 1914. The plaintiff testified that the items contained in this set-off were never presented to him until in 1918, the day before the filing of this suit and that until that time he never heard of them.

Upon the conclusion of the testimony the circuit judge filed a written decision in which after reviewing the testimony he said: "I find as a matter of fact that the defendant was not in the employ of the plaintiff during the year 1912. * * * I find as a matter of fact that

the defendant did not employ any men during the year 1912 to assist him at the landing at Laupahoehoe to handle plaintiff's merchandise. Defendant introduced two books in evidence marked Defendant's Exhibits '1' and '2' respectively. The very attitude of defendant while on the stand and from a casual inspection of the exhibits just above referred to conveys to the mind of the court that the books are no more reliable than the testimony adduced by defendant and his witnesses. I do not believe their evidence. I find as a matter of fact that in the month of July or August, 1912 a settlement in full was had between plaintiff and defendant and in that settlement defendant paid plaintiff $86.00. I find as a matter of fact that defendant never demanded of plaintiff, between the settlement in full in July or August of 1912 and the date of the filing of this action by plaintiff, the amount of the set-off. Believing as I do the testimony of plaintiff, he is entitled to the defense of the statute of limitations and defendant's set-off should be defeated on that ground. Plaintiff is a man who impressed the court that he was telling the truth in every particular, so I believe his evidence and I do not believe the evidence of the defendant or his witnesses."

The defendant recognizes the rule of law that the decision of the circuit judge in a jury-waived case is equivalent to the verdict of a jury and will not be disturbed if supported by evidence but contends that the decision should be a judicial decision, that is, a decision reached in accordance with established rules of law. His contention in this respect is no doubt correct, but with his further contention that in this case the evidence does not support the decision we cannot agree. The plaintiff's testimony contradicts every material part of defendant's case and while defendant brought other witnesses who corroborated him in part of his testimony we are unable

to say that the circuit judge was not justified in believing plaintiff and disbelieving defendant and his witnesses. He heard the witnesses testify and observed their demeanor while on the stand and has said that he does not believe their testimony. There is no rule of law which compels one to believe as a judge what he does not believe as a man. It is not always the greatest number of witnesses testifying as to a fact that carries conviction. The testimony of one witness may overcome that of several if the one gives the impression that he is truthful and the others do not. Issues concerning the credibility of witnesses and the weight of the evidence are to be determined by the trial court and the findings cannot be disturbed if supported by evidence. The circuit judge having observed the demeanor of the witnesses and decided in accordance with plaintiff's testimony his decision will not be disturbed regardless of the grounds on which the decision is based. (*Lau Lam* v. *Whitcomb,* 21 Haw. 252; *Scott* v. *Kona Development Co.,* 21 Haw. 258.)

This brings us to a consideration of the exception to the refusal to dissolve the writ of attachment. The defendant has expressly waived the first two grounds which go to the alleged irregularities in the issuance of the writ for the reason that no practical benefit would accrue from a sustaining of those grounds since an execution could now issue on the judgment. But he urges the remaining grounds, all of which raise the same question, namely, whether or not the property levied upon is exempt and if so whether the writ should be dissolved for that reason.

One of plaintiff's contentions is that the question of whether or not the property is exempt cannot properly be considered on a motion to dissolve the writ of attachment.

The first question raised by the argument of the par-

ties which we will now notice is the question of whether this is merely a motion to dissolve the writ of attachment or may be also considered as a motion to quash the levy on the ground that the property levied upon is exempt. Certainly the first two grounds set forth in the motion and which have been abandoned were put forth for the purpose of procuring a dissolution of the writ itself but the remaining grounds upon which the defendant relies here are proper grounds for questioning the levy (*Atcherley* v. *Jarrett,* 19 Haw. 511,) and must be considered if the motion can be construed to be a motion to quash the levy. But we do not think the motion can be so construed. The motion is "that the writ of attachment * * * be dissolved and the same be declared to be of no force and effect as against this defendant and the property of this defendant," and the prayer is "that said writ of attachment be dissolved and dismissed and held for naught and be declared to be no lien on the defendant's property." If then the exemption of the property levied upon cannot be inquired into on a motion to dissolve the writ the circuit judge was right in denying the motion regardless of whether the property levied upon is or is not exempt. In 6 C. J. 431 it is said that "it is usually not a sufficient ground for dissolving a writ of attachment that the property levied on thereunder was not legally subject to seizure under the writ."

Section 2797 R. L. 1915 provides that the defendant may at any time after he has appeared in the action, either before or after the release of the attached property or before any attachment shall have been actually levied, apply on motion upon reasonable notice to the plaintiff to the court in which the action is brought, or to the judge thereof, that the writ of attachment be discharged on the ground that the same was improperly issued. If upon such application it satisfactorily appears that the

writ of attachment was improperly issued it shall be discharged. In the case of *Holman* v. *Cooper*, 48 Wash. 24, the defendants appeared specially and moved to dissolve the attachment upon the records and files and upon the evidence attached to the motion. The affidavits were in substance that the note upon which the suit was founded was a surety obligation of the defendant T. M. Cooper and that the property attached was the community property of the defendants and not subject to attachment for that debt. The attachment was dissolved and the plaintiff appealed. In a discussion of this question the court said: "The attachment is a purely statutory matter and before the writ can be issued the requirements of the statute must be strictly met. The dissolution of an attachment is equally statutory and the mandate of the statute in that respect must also be complied with. Our statute provides * * * that the defendant may at any time after he has appeared in the action apply upon motion to the court in which the action is brought, or to the judge thereof, that the writ of attachment be discharged on the ground that the same was improperly or irregularly issued. No such application was made in this case, the ground of the motion not being that the attachment was improperly or irregularly issued but that the property levied upon was exempt from seizure under the writ of attachment. So that it is plain that the requirements of the statute have not been met in that respect." In *Quigley* v. *McEvony*, 41 Neb. 73, 78, it is said that "the main propositions to be decided at such a hearing are, first, the sufficiency of the affidavit; second, the falsity of the charge in the affidavit filed to obtain the issuance of the writ of attachment. Whatever matters may be in some cases necessarily or properly heard and determined we do not think it is competent or proper practice where the writ is levied upon real estate

belonging to the debtor to allow the homestead character of the property to be drawn in question as one of the grounds of the motion to discharge the attachment." In *Foundry Co.* v. *Mfg. Co.*, 11 Utah 404, 413, the court after holding that the Utah statute does not authorize the dissolution of the attachment on the ground of the exempt nature of the property said: "Nor is the authority for it to be found in that somewhat hazy field of jurisprudence known as the 'inherent power of the court.'" (See also *Culhane Adjustment Co.* v. *Farrand*, 34 S. D. 87, 147 N. W. 271; *Mason, Ehrman & Co.* v. *Lieuallen*, 4 Idaho 415.) It will be noted that our statute setting forth the ground upon which a writ of attachment may be discharged is almost identical with the Washington statute referred to in the case from which we have quoted, which fact removes any objection that may be urged against the application of the decisions of that State because based on a construction of their statute. From these decisions we gather the rule to be that it is not a sufficient ground for dissolving a writ of attachment that the property levied upon is exempt from seizure under the writ. We are not unmindful of the fact that there are some decisions holding to the contrary. (*McLaren* v. *Hall*, 26 Ia. 297; *Lodor* v. *Baker, Arnold & Co.*, 39 N. J. L. 49, and *Brenizer* v. *Supreme Council*, 141 N. C. 409, 53 S. E. 835.)

For the reasons set forth we think the exceptions should be overruled and it is so ordered.

*J. W. Russell* (*Russell & Patterson* on the brief) for plaintiff.

*W. H. Smith* (*H. L. Ross* and *W. S. Wise* with him on the brief) for defendant.