## MORRIS *v.* WHEAT.

EJECTMENT ; QUIT-CLAIM DEEDS ; BONA FIDE PURCHASER ; ESTOPPEL BY DEED.

1. To sustain a recovery in an action of ejectment brought by several plaintiffs, all must be shown to have title ; it is not enough to prove title in some of them.
2. A quit-claim deed passes only such title as the grantor has to convey ; and the grantee cannot be regarded as a *bona fide* purchaser without notice.
3. The grantor in a deed, and those in privity with him, are not only estopped from disputing the deed itself, but every fact it recites.
4. Where the grantor in a deed purports to grant as guardian, but covenants in his own name for further assurances and for a general warranty of the title in fee simple, he and a future assignee are estopped to deny the title of the grantee.

No. 415. Submitted November 21, 1895. Decided April 10, 1896.

HEARING on an appeal by the defendant from a judgment on verdict in an action of ejectment. *Reversed.*

The COURT in its opinion stated the case as follows :

This is an action of ejectment.    It appears that George O. Dixon, about June 13, 1862, as of an estate in fee simple entered into possession of lots 21 and 22 in square 117, in Washington.    He died in Alexandria, Virginia, unmarried and without issue, August 10, 1862, leaving as heirs at law his brother, John A. Dixon, and his sisters, Mrs. Emily Wheat and Mrs. Jane E. Baker.    The first two lived in Alexandria; the last in Massachusetts.

By his will, attested by only two witnesses, George O. Dixon devised property to his brother and sisters, and made the children of his brother his residuary legatees, and appointed John A. Dixon his executor.    Until 1885, the sisters were ignorant respecting these lots, and it appears that the brother believed that the lots passed to his children as residuary legatees of George O. Dixon.

Mrs. Wheat died in 1875, leaving one child, a son, the plaintiff, Milton M. Wheat.    The husband of Mrs. Baker died January 31, 1888.    The record is silent respecting the husband of Mrs. Wheat.    That his death occurred before this suit is assumed.    This suit was brought and the declaration in ejectment was filed October 9, 1888.

The lots were under lease to William H. Parker when George O. Dixon died, and on August 1, 1864, one James F. Haliday, as attorney for John A. Dixon, administrator of George O. Dixon, deceased, leased these lots to William H. Parker for a term of ten years, commencing August 1, 1864, renewable for another term of ten years thereafter.

On May 11, 1871, John A. Dixon, as guardian of his minor children, Arthur and Fanny Dixon, uniting with Ella Dixon his adult daughter, conveyed these lots to Henry A. Parker, for the consideration of $1,400, and on the same day William H. Parker assigned his lease of the lots to Henry A. Parker.

On March 10, 1886, when they were of age, Arthur and Fanny Dixon, as children of John A. Dixon and devisees of George O. Dixon, conveyed their estate in these lots to Henry A. Parker.    On the same day, however, John A.

Dixon, "as one of the heirs of his brother George," in consideration of $10, conveyed the lots to George S. Parker. This last conveyance was made at the written request of Henry A. Parker.

The defendant, Louisa Morris, whose husband, Patrick Morris, died before this suit, claimed under a deed dated January 16, 1874, from Henry A. Parker to Patrick and Louisa Morris. These grantees entered in February, 1869, and the defendant has lived there ever since in a frame house erected thereon. This entry and possession was under a written agreement of sale, dated February 1, 1869, and the defendant made the full payment of the purchase money, and thereupon the last named deed was executed

*Mr. Frank W. Hackett* for the appellants :

The recital by John A. Dixon, in his deed to Henry A. Parker, that the fee simple title was in his children, estops him from asserting title in himself. *Heard* v. *Hall*, 16 Pick. 457 ; *Van Rensselaer* v. *Kearney*, 11 How. 325. Dixon's conveyance to George S. Parker was that of his title and interest only, and the grantee was not a *bona fide* purchaser. *May* v. *Le Claire*, 11 Wall. 217. Equitable estoppel can be relied on at law. *Dickerson* v. *Colgrove*, 100 U. S. 578.

George S. Parker (who evidently became assignee of John A. Dixon for the reason that Dixon could not himself sue) is likewise estopped. He cannot maintain this action, and the verdict in his favor as one of the tenants in common is error. "It is a settled rule," says STORY, J., "that all the plaintiffs in a suit must be competent to sue, otherwise the action cannot be supported." *Marsteller* v. *McLean*, 7 Cranch, 156.

2. When George O. Dixon died the lots were under lease. Immediately John A. Dixon entered, took the rents and appropriated them to the use of his children. The lease of August 1, 1864, is entirely consistent with the belief on the part of John A. Dixon that the lots (together with the rents) belonged to his children. It does not purport to have been

made by John A. Dixon, in his capacity as administrator. Administrators have no right to make leases. The lease is executed by Haliday, agent of Dixon. The words "administrator of George O. Dixon, deceased," are words of identity that disclose a principal. Whether that principal was acting in his capacity of executor (for he was not an administrator), or in his own right, or as guardian of his children, is a fact that can be shown without contradicting the terms of the lease.

That John A. Dixon directed this lease to be made for the benefit of his children is apparent from the fact that in the clause of re-entry and the covenant for payment of rent we find the word "Dixon," and not "Dixon, administrator;" also from the fact that in John A. Dixon's deed to Henry A. Parker this lease is referred to as "made between James F. Haliday, his agent, an attorney of the said John A. Dixon (*i. e.*, agent of John A. Dixon, *guardian*), and W. H. Parker."

The learned judge below erred in assuming that this lease shows that the heirs of George A. Dixon were lessors. That is to assume that John A. Dixon when he directed the making of a lease did so for the benefit of himself and his two sisters without knowing it; and did so, supposing that the lots belonged to his children.

William H. Parker's being in possession from date of George O. Dixon's death in 1862, and paying rent to the John A. Dixon children, was a holding adverse to the heirs. Through Henry Parker the defendant, therefore, had been in possession as against the heirs since 1862—a period of twenty-six years before suit was brought.

3. The motion in arrest of judgment should have been granted. We originally demurred to the declaration, on the ground that tenants in common could not join as plaintiffs in ejectment. The court sustained our demurrer. On appeal, the General Term reversed the court below. We urged in argument upon demurrer before the General Term that the declaration fails to set forth, as required by the rules,

" the nature and extent of the estate claimed by the plaintiff in the premises." This defect still exists, and is good ground now for arrest of judgment.

Plaintiffs do not claim the land itself in fee simple. They do not allege that they were seized of the land. They claim an "interest" *in* the land. The nature of the estate thus claimed is therefore a fee simple interest, but its *extent* is not alleged, even by implication. It may be a fee simple in one-twentieth of the land ; or, nothing more than a fee simple interest in a single room of the house occupying a part of the land. 1 Washburn on Real Property (5th ed.), p. 18.

A declaration should set forth the title of the plaintiff in terms so explicit that a judgment in his favor will determine the character of his estate, and not simply his right of possession. *Taylor* v. *O'Neil,* 15 R. I. 198. Compare *Craig* v. *Taylor,* 6 B. Mon. 457.

The plaintiffs, it is true, end their declaration by claiming "possession of the whole of said part of lot 21." But this is nothing else than formally asking the court to award them such possession. It is not an allegation of facts which show that plaintiffs upon the record are entitled to recover the whole of the land.

An allegation that plaintiffs were possessed of the land is sustained by proof that they were once in possession of so much of the land as is embraced in their interest, be it more or less. Such interest may have extended no further than to one-twentieth of the premises described.

Nor is the defect cured by verdict. It is no ground for asserting a cure by verdict, that the testimony appears to have been directed to the ownership of lots 21 and 22, lots which it is conceded include these premises as a part. It still remains that plaintiffs must establish the better title in themselves to land, to the possession of which they must, by apt words, have alleged themselves entitled. They allege only an *interest,* the extent of which they do not state.

The verdict may prove that all that the plaintiffs have alleged is true, and yet fall short of establishing the fact that

the plaintiffs are owners of *all* of " part of lot 21," as described.   An interest in fee simple *in* " part of lot 21 " is proved by showing that a plaintiff owns some portion of such part.   In other words, the declaration does not set forth what *estate* the plaintiffs were unlawfully ejected from.

*Mr. H. O. Claughton* for the appellees :

1. This case is a controversy between the heirs at law of George O. Dixon, and those who claim through the alleged devisees of George O. Dixon, both parties claiming under George O. Dixon.   The only question is, was the will valid as to the property, so as to vest title in the devisees, through whom the appellant claims.   And to this question there can be but one answer, and that is, that as the will was not attested by three or more witnesses it was inoperative as to real estate situated in the District of Columbia.

2. In the Federal courts, the doctrine of  equitable estoppel has no place in actions of ejectment ; and the defendant, therefore, cannot defend against the plaintiff's legal title by proving an estoppel. *Johnson* v. *Christian*, 128 U. S. 374.   That case is conclusive of this, even conceding that in this case there is an equitable estoppel.   If the equitable estoppel in that case could not be set up as a defence in the action of ejectment, is it possible to conceive of an equitable estoppel that could be so used?

The general principle relied upon has been over and again declared by the Supreme Court.   " In actions of ejectment in the United States courts, the strict legal title prevails.   If there be equities that should show right in another that can only be considered on the equity side of the Federal Court." *Foster* v. *Mora*, 98 U. S. 425.

In addition to all this, there are other principles applicable to this case :   1. This is not the case of a conveyance without title and an after acquired title.   2. In order to work estoppel on the ground that one was silent when another purchased his property, it is absolutely necessary

that he should have known the property was his. 3. In order for a deed to work an estoppel it must be a valid deed. The rule is the same in Maryland. 70 Md. 305.

Mr. Justice McComas, of the Supreme Court of the District of Columbia, who sat with the Court in the hearing of this cause in the place of Mr. Justice Morris, delivered the opinion of the Court:

The first assignment of error is the refusal of the learned court below to instruct the jury to bring in a verdict for the defendant, on the ground that George S. Parker, one of the plaintiffs, had no more right to prosecute this action than had John A. Dixon; that John A. Dixon's deed estopped him and the plaintiff, George S. Parker, his assignee; and this being a joint action, since Parker, one plaintiff, could not recover, the plaintiffs could not recover.

It is a settled rule that all the plaintiffs in a suit must be competent to sue; otherwise the action cannot be supported. *Marsteller* v. *McLean*, 7 Cranch, 156; *Hoyle et al.* v. *Stowe*, 2 Dev. (Law) 321; 1 Chitty Pl. 76.

The legal title and right of possession must exist in each and all of the plaintiffs at the time of recovery, or they cannot sustain the action. It is not enough to prove a title in some of them. If one of the plaintiffs have no title the co-plaintiffs cannot recover. *Chancy et al.* v. *Chancy et al.* 26 Vt. 698; *Gilbert* v. *Slavely*, 1 Hill, 128–9; Tyler on Ejectment, 202; *Dickey* v. *Armstrong*, 1 A. K. Marshall (Ky.), 30; *De Mill* v. *Lockwood*, 3 Blatchf. C. C. 61; *Murphy* v. *Orr*, 32 Ill. 492–3; Sedgwick & Wait, Title to Land, sec. 187; 1 Poe Pl. & Pr., sec. 430.

The written request by Henry A. Parker of John A. Dixon, by letter dated March 10, 1886, that he convey his estate, if any he have, in these lots, and the deed from John A. Dixon, as one of the heirs of his brother George, to George S. Parker, of the same date, for the consideration of ten dollars, show that this conveyance was in purpose and effect a quit-claim deed. George S. Parker hav-

ing acquired his title by a quit-claim deed cannot be regarded as a *bona fide* purchaser without notice. In a case like this the conveyance passes the title as the grantor held it, and the grantee takes only what the grantor could lawfully convey. *May* v. *Le Claire*, 11 Wall. 232.

The recitals in the deed from John A. Dixon to Henry A. Parker estop him from asserting title in himself in respect of those lots, and would estop him as plaintiff, and do estop his assignee, George S. Parker, the present plaintiff, from maintaining this action of ejectment.

In *Heard* v. *Hall*, 16 Pick. 460, 462, the question was whether the plaintiff was estopped by the principles of the common law to set up his title from a certain grantor, and it was held that a party is not allowed to plead or to prove any matter inconsistent with the terms of his deed. The plaintiff had sold the interest in lands in his capacity as guardian, by virtue of a license duly granted, and the purchaser did not suppose he was purchasing the title of his grantor, for no such title was supposed to exist. The court say: " But in the present case, the petitioner's deed purports to be an unqualified grant of the land to the grantee in fee simple. It purports to pass the whole estate, and it is utterly inconsistent with the plain import of the grant to allow the petitioner now to show that only a part of the estate passed by that conveyance." It was held that the respondent had a right to avail himself of the estoppel.

Where a party has solemnly admitted a fact by deed under his hand and seal he is estopped not only from disputing the deed itself, but every fact which it recites. 3 Washburn Real Property (5th ed.), 109 ; *Stow* v. *Wyse*, 7 Conn. 214.

Such an admission under the seal of the party prevents him from disputing the truth of any fact which the deed states, for a deed is a solemn act, to any part of which the law gives effect as the deliberate admission of the maker ; it stands to him for truth, and in every situation that he

may be placed in, to him it is true. *Douglass* v. *Scott,* 5. Ohio, 198 ; *Trustees, etc.,* v. *Smith,* 118 N. Y. 641.

The obligation created by estoppel not only binds the party making it, but all persons privy to him, those who stand in his situation by act of law, and all who take his estate by contract entered into in his stead, are subjected to all the consequences that accrue to him. It adheres to the land, is transmitted with the estate, it becomes a muniment of title, and all who afterwards acquire the title take it subject to the burden which the existence of the fact imposes. *Douglass* v. *Scott,* 5 Ohio, 198.

In *Van Rensellaer* v. *Kearney,* 11 Howard, 297, the case involved the New York act of 1786 abolishing entails. It was held that by the true construction of that act John Van Rensellaer, the first born son of John J. Van Rensellaer, took a fee simple absolute in remainder in the premises, and that on his death in 1813 it descended to his father, the life tenant, and the two estates being thus united in him, he became vested with the whole estate in fee simple absolute. In 1795, John J., the life tenant, sold and conveyed the premises in fee to Penfield. At the date of this conveyance it was the opinion of the profession that John J., the grandson, took an estate in fee-tail under the will of his grandfather, within the rule in Shelley's Case which the act of 1786 had turned into a fee simple absolute, and the purchase was made under the belief that he was competent to convey the fee. This construction was a mistaken one, and he took only an estate for life, which terminated on his death in 1828. At that time he was seized of the whole estate in fee, in consequence of the death of his eldest son, the first born tenant in fee-tail, in 1813, and which descended to his four children as tenants in common, of whom the complainant Jeremiah Van Rensellaer was one, unless all of them were estopped from setting up the title by the deed of 1795 to Penfield, under whom the defendants Kearney and others held. The court say : " If the deed bears on its face evidence that the grantor intended to convey and the grantee

expected to become invested with an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then, although it may not contain any covenants of title in the technical sense of the term, still the legal' operation and effect of the instrument will be as binding upon the grantor and those claiming under him in respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least so far as to estop them from ever afterwards denying that he was seized of the particular estate at the time of the conveyance."

After reviewing many authorities, the court say : "The principle deducible from these authorities seems to be, that whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument by way of recital or agreement that he is seized or possessed of a particular estate in the premises, which estate the deed purports to convey, or what is the same thing, if the seisin or possession of a particular estate is affirmed in the deed either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after acquired title as between parties and privies. The reason is that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it."

Now applying this doctrine to the case in hand, let us see what John A. Dixon affirmed in his deed of May 11, 1871, to Henry A. Parker, executed when Dixon lived in Virginia and when he must have supposed that his brother's will had devised these lots to his children, and before he knew that because only two witnesses attested that will it was inoperative in this jurisdiction to pass the title to lands.

This indenture is between John A. Dixon, guardian of his two minor children, Arthur and Fanny Dixon, and Ella Dixon, his adult child, of the one part, and Henry A. Parker, (son of William Parker), of the District, of the second part. It recites that " Whereas the said party of the second part has purchased of the said parties of the first part the premises hereinafter described (subject, nevertheless, to a certain indenture dated on or about the first day of August, in the year 1864, made between James F. Haliday, as agent or attorney of the said John A. Dixon, and the said William H. Parker  *  *  ), the *fee-simple title to which premises is held by the said children of the said John A. Dixon;* and whereas two of said children are minors under twenty-one, and unable to execute a valid deed of conveyance of said premises at this time ; and whereas, *in order to convey and assure to said party hereto of the second part, his heirs and assigns, all the right, title, interest and estate of the said parties of the first part, each of them, in and to said premises, so far as the same can now be done, the said parties hereto of the first part have agreed to execute these presents.*" This conveyance later proceeds to recite that for $1,400 " the parties of the first part have granted, bargained, sold, etc., and by these presents do grant, bargain, sell, convey, etc.,  *  *  * to the party of the second part, his heirs and assigns forever," subject to the lease mentioned, these lots 21 and 22 in square 117, " *and all the right, title, interest and estate; legal and equitable, of the parties of the first part, and each of them.*" And further, " the said John A. Dixon, for himself, his heirs, executors and administrators, doth hereby covenant, promise and agree to and with the said party of the second part, his heirs and assigns, to warrant and defend said granted premises to him and them against all persons claiming or to claim the same by or under or through said parties of the first part, and their heirs, or any of them," subject to the existing lease.

Then follows what is intended to be a covenant for further assurances by John A. Dixon, and particularly an un-

dertaking to procure from Arthur and Fanny, John A. Dixon's infant children, a conveyance to Henry A. Parker " in fee simple " of their estate in these lots.

We conclude that the seizin or possession of an estate in fee simple is affirmed in the deed, and John A. Dixon and his grantee are alike estopped from disputing it in this suit against Henry A. Parker, his grantee, or this defendant Morris, the subsequent grantee from Henry A. Parker.

We conclude that the seisin or possession of an estate in fee simple in these lots as in the grantors is affirmed in this deed; that John A. Dixon affirmed it in the recitals and covenants therein; and that these matters must necessarily have influenced the grantee in making the purchase; and that John A. Dixon, one of the grantors, purporting to grant as guardian of his minor children, but covenanting in his own name for further assurances and for a general warranty of the title in fee simple, is now precluded from gainsaying the title of his grantee, Henry A. Parker. As we have said, John A. Dixon's grantee under the quit-claim deed, the plaintiff George S. Parker, is in like manner estopped from maintaining this action. Since the plaintiff George S. Parker is not competent to sue, this action cannot be supported in behalf of the remaining plaintiffs, and the judgment, for this reason, must be reversed. It does not appear necessary to consider the remaining assignments of error.

*The judgment of the court below must be reversed, with costs; and this cause remanded for proceedings in accordance with this opinion.*