JACK DEVELOPMENT, INC., Appellant,

v.

HOWARD EALES, INC. and Tifco, Inc., Appellees.

No. 12570.

District of Columbia Court of Appeals.

Argued Jan. 3, 1978.

Decided June 8, 1978.

Mark S. Mendelsohn, Hagerstown, Md., for appellant.

Daniel V. S. McEvily, Washington, D. C., with whom William A. Glasgow, Washington, D. C., was on the brief, for appellees.

Before KERN, GALLAGHER and YEAGLEY, Associate Judges.

PER CURIAM:

Appellant, Jack Development, Inc., intervened in a civil action pursuant to D.C.Code 1973, § 16–520,[1] and moved to quash a writ of attachment issued against property of the defendant which had been transferred to the intervenor. The intervenor now appeals the trial court's denial of this motion.[2]

Service of process by certified mail on John D. Howell, individually and as general partner of defendant Corcoran Limited Partnership, had been unsuccessful, D.C. Code 1973, § 13–431(a)(3), (b), and Howard Eales, Inc., and Tifco, Inc., sought jurisdiction over the defendant through a writ of attachment before judgment. D.C.Code 1973, §§ 16–501 et seq. It was issued against the defendant's real property on April 15, 1976. The marshal was instructed to levy by posting the papers on the vacant building owned by Corcoran at 1718 Corcoran Street, N.W., in the District, and a copy of the writ was mailed to the defendant. Although the marshal posted the property on June 21, 1976, he did not sign and file the endorsement to the writ of attachment until February 2, 1977. On October 28, 1976, Eales and Tifco had filed a motion for an order permitting service of process on the defendant by publication. Such publication was ordered, and the first date of publication was February 28, 1977. Previously, however, on October 19, 1976, appellant Jack Development, Inc., had acquired title to the defendant's property at 1718 Corcoran Street, N.W., by quitclaim deed, which was recorded in the Office of the Recorder of Deeds on December 10, 1976. The sequence of relevant events therefore was:

1. D.C.Code 1973, § 16–520 provides that "a stranger to the action who may make a claim to the property attached,' may file an answer defending against the attachment."

2. The controversy in this case arose from the following facts. Plaintiffs Howard Eales, Inc., and Tifco, Inc., sued Corcoran Limited Partnership, a Virginia limited partnership of which John D. Howell was the general partner. Eales is a District of Columbia corporation which does business as a general insurance agent, and in that capacity, had written insurance policies for defendant Corcoran. When the defendant fell behind in paying the premiums on certain

*April 15, 1976*—Writ of attachment before judgment issued by trial court against defendant's realty

*June 21, 1976*—Marshal posts realty with writ

*October 19, 1976*—Defendant conveys realty to Jack Development, Inc., by quitclaim deed

*December 10, 1976*—Quitclaim deed to realty recorded by Jack Development, Inc.

*February 2, 1977*—Marshal signs and files the indorsement on the writ of attachment before judgment which he had posted on the realty the previous June

*February 28, 1977*—First date of service of process on defendant by publication

Subsequently, Jack Development moved for leave to intervene in the suit between appellees and defendant Corcoran for the purpose of attempting to quash the writ of attachment, and intervention was granted on March 25, 1977. The appellant's motion to quash the writ of attachment was denied on June 22, 1977. The defendant never appeared in the suit, and on May 9, 1977, default judgment was entered against Corcoran Limited Partnership and John D. Howell, the general partner.

■ Appellant Jack Development argues that it acquired title to the property at 1718 Corcoran Street, N.W., free of the writ of attachment before judgment which had been issued against the transferor, since the defendant transferred his interest *prior to service upon the transferor of the writ of attachment and the indorsement and notice,*

insurance policies written by Eales, it entered into a contract with plaintiff Tifco, a Maryland corporation, whereby Tifco would pay the defendant's past due and current insurance premium obligations, and the defendant would repay Tifco. At the same time, in order to induce Tifco to finance the defendant's insurance premium obligation, plaintiff Eales guaranteed the defendant's indebtedness to Tifco. In August 1975, the defendant defaulted and Eales assumed the monthly payments on the defendant's debt to Tifco. Thereafter, on January 30, 1976, plaintiffs Eales and Tifco sued Corcoran in Superior Court.

as required by D.C.Code 1973, §§ 16–502, –508.[3] In response, appellees contend that because they delivered a copy of the indorsement of the writ to the marshal, and he posted the property on June 21, 1976, the property was effectively levied as of that date; thus, when Jack Development obtained 1718 Corcoran Street, N.W., by quitclaim deed from defendant on October 19, 1976, it took the property subject to the writ of attachment.

According to D.C.Code 1973, § 16–507(b), delivery of a writ of attachment before judgment creates a lien on the property as of that date. There is no dispute over the fact that this lien was, however, an inchoate one which became a perfected attachment only after the writ had been properly levied. D.C.Code 1973, § 16–508 sets forth the additional steps which are necessary for a levy to be sufficient:

1) mentioning and describing the property in an indorsement on the attachment, made by the officer to whom it is delivered for service, to the following effect:

"Levied on the following estate of the defendant, AB, to wit: (Here describe) this _____ day of _____. CD, Marshal."; *and*

2) *serving a copy of the attachment,* with the indorsement, *and the notice required by section 16–502,* on the person, if any, in possession of the property. (Emphasis added.)

The Code further provides that if a defendant cannot be found, notice must be given by *publication* for three successive weeks, pursuant to court order, informing the defendant, that he must appear and show cause why the property so attached should

not be condemned. D.C.Code 1973, § 16–502(b), (c).

Initially, we note that because a writ of attachment before judgment is a harsh and drastic remedy, strict compliance with the procedures established by the statute is required. *Rieffer v. Home Indemnity Co.,* D.C.Mun.App., 61 A.2d 26, 27, *modified on other grounds,* D.C.Mun.App., 62 A.2d 371 (1948); *Petroni v. Bass,* 186 F.Supp. 759, 760 (D.D.C.1960). In this case, the delivery of the writ of attachment before judgment to the marshal did create an inchoate lien on the defendant's property. *See* D.C.Code 1973, § 16–507(b); *Trigo v. Riggs National Bank of Washington,* D.C. App., 338 A.2d 445, 449–50 (1975). The mere posting of the property did *not* comply, however, with the notice procedures mandated by D.C.Code 1973, §§ 16–502, –508.[4] Consequently, we reject the assertion of the appellees that the property was effectively levied on June 21, 1976, the date on which it was posted by the marshal.[5]

The statutory requirements were not completed in this case until three weeks after the first date of publication on February 28, 1977. *See* D.C.Code 1973, § 16–502(c). At that time, the attachment normally would relate back to the date of the delivery of the writ to the marshal, *i. e.,* April 15, 1976. *See* D.C.Code 1973, § 16–507(b). Here, however, the defendant during the intervening period had transferred the property by quitclaim deed to Jack Development and appellant had recorded its deed on December 10, 1976—all such dates being prior to appellee's full compliance with the attachment statute. The question

**3.** An attachment does not preclude a subsequent transfer of the attached property; if the attachment has been perfected, however, the transferee takes the property subject to the attachment. *See* 6 Am.Jur.2d *Attachment and Garnishment* §§ 459, 472 (1963) (citations omitted.)

4. Under D.C.Code 1973, § 16–502(c), notice was not made effectively on the defendant until three weeks after the first date of publication on February 28, 1977. Both the transfer of the property by quitclaim deed on October 19, 1976, and the recording of the deed on Decem-

ber 10, 1976, thus occurred prior to effective notice to the defendant of the writ of attachment before judgment.

**5.** Although a copy of the writ of attachment was mailed to the defendant at the time it was delivered to the marshal, this was insufficient to comply with D.C.Code 1973, §§ 16–502, –508, since by its language the statute requires notice of a *perfected levy,* not merely notice of the issuance of the attachment writ. *See also,* 6 Am.Jur.2d *Attachment and Garnishment* § 293 (1963) (citations omitted).

therefore is whether the recording of the deed by Jack Development terminated the inchoate lien on the property which had commenced with the delivery of the writ of attachment to the marshal.

Appellees argue that because title in this case was passed by *quitclaim* deed, Jack Development cannot be regarded as a bona fide purchaser, since holding by quitclaim deed puts the purchaser on notice that the title is defective. The single case cited to us by appellees, and apparently the only applicable case in this jurisdiction, is *Morris v. Wheat,* 8 App.D.C. 379 (1896). Although it supports their proposition, we do not find this authority to be persuasive. *Morris* relied on a Supreme Court case, *May v. LeClaire,* 78 U.S. 217, 20 L.Ed. 50 (1871), which had been in the interim overruled by the Supreme Court in *Moelle v. Sherwood,* 148 U.S. 21, 13 S.Ct. 426, 37 L.Ed. 350 (1893), and a companion case, *United States v. California and Oregon Land Co.,* 148 U.S. 31, 13 S.Ct. 458, 37 L.Ed. 354 (1893). As the Court noted, the assumption that a quitclaim deed gives per se notice of defective title is not

> justified by the language of such deeds or the general opinion of conveyancers. There may be many reasons why the holder of property may refuse to accompany his conveyance of it with an express warranty of the soundness of its title, or its freedom from the claims of others, or to execute a conveyance in such form as to imply a warranty of any kind, even when the title is known to be perfect. [*Moelle v. Sherwood, supra,* 148 U.S. at 28–29, 13 S.Ct. at 428.]

Consequently, taking by quitclaim deed did not preclude Jack Development from proving that it was a bona fide purchaser who took the property without notice of the writ of attachment. Here, a valid transfer occurred before the defendant himself had been given notice of a sufficiently levied writ of attachment in compliance with the statute. D.C.Code 1973, § 16–508. Jack Development therefore took the property free of the writ of attachment which had been sought against the transferor. The writ of attachment consequently should have been quashed, and the judgment of the trial court is

*Reversed.*