916 P.2d 680

In the Matter of the Application of MAT-
SON NAVIGATION CO. to register title
to land situate in Honouli, island and
County of Maui, State of Hawai'i, Paul
J. Levine and Marie Lynne Levine, Peti-
tioners,

v.

FEDERAL DEPOSIT INSURANCE
CORPORATION as the Receiver
for Sentinel Bank, Respondent.

No. 16949.

Supreme Court of Hawai'i.

April 30, 1996.

Lorrin R. Hirano (Charles A. Price, with him on the briefs of Ashford & Wriston), Honolulu, for appellants Paul J. Levine and Marie Lynne Levine.

Robert M. Ehrhorn, Jr. (Christine E. Murai, with him on the brief of Takushi Funaki Wong & Stone), Honolulu, for Federal Deposit Insurance Corporation as the Receiver for Sentinel Bank.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

KLEIN, Justice.

Appellants Paul J. Levine and Marie Lynne Levine filed a petition in the Land Court against the Federal Deposit Insurance Corp. (FDIC) seeking to expunge a memorandum on their certificate of title to a parcel of registered property located in Kīhei, Maui (the subject property). The memorandum that the Levines sought to have expunged was an attachment that had been recorded on behalf of Sentinel Bank (Sentinel), for whom the FDIC serves as receiver. The parties filed cross-motions for summary judgment; the Land Court granted the FDIC's motion and denied the Levines' motion. The Land Court accordingly entered a decree in favor of the FDIC and against the Levines, denying the Levines' petition to expunge. The Levines now appeal.

## I. BACKGROUND

During 1988 and 1989, Sentinel, a Connecticut corporation, made a number of loans and issued lines of credit (the loans) to East Coast Consultants, Inc. (ECCI), a Hawai'i corporation. The aggregate amount of the loans was approximately $861,000, and the loans were guaranteed by William and Katherine Still Chaplick, who were officers of ECCI and residents of Connecticut. The subject property was among the assets owned by ECCI but was not pledged as security for any of the loans.

On April 27, 1990, ECCI and the Levines entered into a Deposit, Receipt, Offer and Acceptance (DROA) contract for the subject property. The purchase price was set at $565,000 and closing was scheduled to take place on July 31, 1990. Meanwhile, on July 24, 1990, Sentinel filed a complaint against

ECCI and the Chaplicks in the First Circuit Court alleging that ECCI had defaulted on the loans. Sentinel demanded judgment in excess of $846,000.

Sentinel was aware that the subject property was scheduled to be transferred to the Levines on July 31, 1990. Therefore, on July 30, 1990, Sentinel filed an Ex Parte Motion for Issuance of Writ of Attachment seeking a writ to attach ECCI's interest in: (1) the subject property; (2) a 10.91 acre parcel of land located in 'Ulupalakua, Maui; and (3) various items of personal property. Sentinel simultaneously filed an Ex Parte Motion for Reduction of Amount of Bond on Attachment seeking permission to post a bond in the amount of $75,000, rather than the almost $1.7 million that would otherwise have been required.[1] In a supporting affidavit, Sentinel's president averred that the value of the subject property was "not in excess of $565,000" (based on the DROA), the value of the 10.91 acre parcel was "no more than $62,500," and the value of the personal property was "no more than $50,000." Sentinel, however, contended that the net value of each of the two parcels of real property was "minimal" because encumbrances on each parcel exceeded its value, and that, therefore, a bond in the amount of $75,000 (one and one-half times the value of the personal property) would satisfy the statutory requirements. The circuit court granted both motions that same day, and the clerk issued the writ of attachment immediately thereafter. About an hour later, a messenger from the law firm representing Sentinel delivered a copy of the writ of attachment to the Office of the Assistant Registrar of the Land Court, where it was recorded as Document No. 1750937.

The following day, the magnetic tape that listed the documents that had been filed in the Land Court on July 30, 1990 contained a listing for the filing of the attachment on

1. Hawai'i Revised Statutes § 651–4 (1993) provides in pertinent part:

 **Bond; amount and conditions.** Before the writ of attachment shall issue, the plaintiff . . . shall execute and file with the clerk a bond . . . in a sum at least double the amount for which the plaintiff demands judgment.... Subject to section 651–5, in any case where the amount for which the plaintiff demands judgment is in excess of $50,000, the court may,

upon motion of the plaintiff, enter an order permitting a bond . . . in a sum as fixed in the order of less than the amount hereinabove set forth; provided that the bond shall in any event be not less than an amount equal to one and one-half times the value of the property of the defendant proposed to be attached as shown to the satisfaction of the court entering the order.

ECCI's title to the subject property. The listings on the magnetic tape are ordinarily organized alphabetically by the name of the holder of the title that the document affects; the attachment on ECCI's title to the subject property, however, was indexed in the "unalphabetized" section of the magnetic tape—apparently because a space was inadvertently entered preceding ECCI's name. Aside from being located in the "unalphabetized" section, the listing was correct (i.e., it accurately identified ECCI's name and the Transfer Certificate of Title (TCT) number, TCT No. 322,713). On August 1, 1990, the Levines, unaware of the attachment, closed their purchase of the subject property, and TCT No. 354,222 was issued to the Levines. Sentinel's attachment was noted on both ECCI's TCT and the Levines' TCT.

On September 29, 1990, the Chaplicks, individually and as officers of ECCI, were personally served in Connecticut with Sentinel's complaint and the attachment and bond motions. Neither ECCI nor the Chaplicks answered or otherwise responded to the complaint. Consequently, on July 5, 1991, Sentinel obtained a default judgment against ECCI and the Chaplicks in the amount of $846,972 plus late charges and interest.

On October 30, 1991, notice of the writ of attachment was published in a local newspaper. Sheriff Remi Taum subsequently posted a copy of the writ of attachment on the subject property on November 3, 1991 and filed a return with the circuit court shortly thereafter.

On April 22, 1992, the Levines filed their Petition to Cancel and Expunge Memorandum on Certificate of Title seeking to have the attachment removed from their TCT. The Levines subsequently moved for summary judgment, and Sentinel filed a cross-motion for summary judgment. On March 30, 1993, after a hearing on the cross-motions, the Land Court issued its written order granting Sentinel's motion and denying the Levines' motion; the court also entered its final decree[2] in favor of Sentinel and

against the Levines on the petition to expunge.

The Levines thereafter timely appealed.

## II. *STANDARD OF REVIEW*

■ Although the Land Court is a tribunal that is separate and distinct from the circuit court, *In re Application of Campbell,* 34 Haw. 10, 11 (1936), pursuant to Rule 81(b)(1) of the Hawai'i Rules of Civil Procedure (HRCP), the HRCP apply to "[p]roceedings in the land court under [Hawai'i Revised Statutes (HRS)] chapter 501," "except insofar as and to the extent that they are inconsistent with specific statutes of the State or rules of court relating to such proceedings[.]" There being no specific statutes or rules relating to Land Court proceedings that are inconsistent with HRCP Rule 56, summary judgment motions before the Land Court are governed by that rule. Under HRCP Rule 56, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." HRCP Rule 56; *see also Harris v. DeSoto,* 80 Hawai'i 425, 431, 911 P.2d 60, 66 (1996) (quoting *Heatherly v. Hilton Hawaiian Village Joint Venture,* 78 Hawai'i 351, 353, 893 P.2d 779, 781 (1995)). On appeal, an order of summary judgment made pursuant to HRCP Rule 56 is reviewed de novo under the same standard. *Id.*

## III. *DISCUSSION*

■ Obtaining a lien on real property by way of attachment is a four stage process. In the first stage, "in any action upon a contract," HRS § 651–2 (1993), the plaintiff may obtain a writ of attachment from "the clerk of the court in which the action is pending," HRS § 651–3 (1993), "with the approval of the court," HRS § 651–7 (1993), upon (1) filing an affidavit meeting the re-

---

2. "The final decree of the land court constitutes the final judgment in a land court action and is akin to a final judgment in a civil case." *State v.*

*Magoon,* 75 Haw. 164, 179, 858 P.2d 712, 720 (1993).

274

quirements of HRS § 651–3 [3] and (2) posting a bond in accordance with HRS § 651–4 (1993).[4] "The writ of attachment . . . shall require the police officer to attach and safely keep so much of the property of the defendant as will be sufficient to satisfy the demand of the plaintiff, with cost and expenses." HRS § 651–7.

■ In the second stage, the real property is actually "attached." This stage is known as "executing the writ" or "levying the attachment." HRS § 651–9(1) (1993) sets forth how this is done:

The police officer [5] to whom the writ is directed and delivered, shall execute the writ without delay as follows:

(1) Real property or any interest therein shall be attached by recording in the office in which conveyances of the real property attached is recorded, a copy of the writ of attachment, with the officer's certificate indorsed or affixed, that by virtue of the original writ of which such copy is a true copy, the officer has attached the real estate, or all of the interest of the defendant therein, describing the same with convenient certainty as the property of the defendant, naming the defendant, in such writ[.]

Once the property has been levied, the attachment is complete. See Calhau v. Sociedade De Santo Antonio, 26 Haw. 342, 347 (1922) ("the levy of the attachment was complete when the sheriff filed a copy of the writ with his certificate indorsed thereon in the office of the registrar of conveyances").[6]

■ Although the attachment is complete upon the levy of the property, the attachment cannot become a lien until the requirements of HRS § 634–29 (1993) are satisfied. See Calhau, 26 Haw. at 348 ("all of the requirements of section 2358 [Revised Laws 1915, the statutory predecessor to HRS § 634–29] must be complied with in order to complete a title under the lien established by the levy"). This is the third stage. HRS § 634–29 provides in pertinent part:

In all cases of attachment . . . of real property, the officer serving the writ shall, in addition to personal delivery of a copy thereof to the defendant, post upon the premises a copy of the process, and a notice of the day and hour when attached, . . . and shall give notice thereof in a newspaper or newspapers suitable for the advertisement of judicial proceedings. But in all cases where a writ of attachment is issued in accordance with chapter 651 relating to attachments, and the defendant in attachment was never a resident of the State or has departed from the State or secretes oneself so that the writ of attachment cannot be personally served upon the defendant, personal service of the writ upon the defendant may be dispensed with.

The purpose of these requirements is solely to "better enabl[e] [the defendant] to guard any interests [the defendant] may have in the property attached." Calhau, 26 Haw. at 347–48.

■ Finally, pursuant to the fourth stage, the plaintiff must obtain judgment in its favor in the underlying contract action. Once judgment is obtained, the judgment lien is given effect as of the time that the attach-

---

**3.** HRS § 651–3 provides in pertinent part:
Before any writ of attachment shall issue, the plaintiff, or someone in the plaintiff's behalf, shall make and file with the clerk an affidavit showing that the defendant is indebted to the plaintiff, specifying the amount of the indebtedness over and above all just credits and offsets, and that the attachment is not sought and the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant.

**4.** See supra note 1.

**5.** "The phrase 'police officer,' as used in this part, means a licensed process server, or the director of public safety or the director's duly authorized representative, and any chief of police

or subordinate police officer." HRS § 651–1 (1993).

**6.** After the police officer has levied the attachment,

[t]he police officer shall make out a full inventory of the property attached and return the same with the writ of attachment. The police officer shall return the writ . . . within such time after its receipt as is allowed for a return of summons, with certificate of the police officer's proceedings indorsed thereon or attached thereto.

HRS § 651–15 (1993).

ment was levied. *See In re Application of Trustees of Robinson,* 51 Haw. 164, 166–167, 454 P.2d 116, 118 (1969) ("The general rule is that the title of a purchaser at an execution sale of attached property relates back to the date of attachment and is free from any lien created after the attachment."). *Cf.* HRS § 634–29 ("All after-leases, mortgages, sales, devises, assignments, trust, or other conveyances of the property, until the dissolution of the process, shall be void in law as against the plaintiff in such cases."); HRS § 651–20 (1993) ("If judgment is recovered by the plaintiff, the levying officer shall satisfy the same out of the property attached by the levying officer which has not been … subjected to execution on another judgment recovered before the issuing of the attachment[.]").

The Levines argue that the attachment should be expunged from their TCT because of irregularities occurring in the first three stages of the process, to wit: (1) the issuance of the writ of attachment by the clerk of the circuit court was invalid because the bond posted by Sentinel was inadequate; (2) the levy of the attachment was invalid because a police officer did not indorse and record the writ; and (3) the requirements of HRS §§ 634–29 and 651–15 were not satisfied in that Sentinel failed "to cause a Sheriff to timely post notice of the attachment on the subject property, publish notice thereof in the newspaper, serve the Writ on the Defendant, file a return with the lower court, and serve the Defendant with process." [7]

**A.** *The Levines have standing to challenge the attachment process, despite the fact that they were not parties to the underlying contract action.*

■ The FDIC argues that because the attachment proceedings were part of the underlying contract action between Sentinel and ECCI to which the Levines were not parties, the Levines do not have standing to attack any aspect of the attachment process. We disagree.

It is well settled that the crucial inquiry with regard to standing is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his or her invocation of the court's jurisdiction and to justify exercise of the court's remedial powers on his or her behalf.

*Cieri v. Leticia Query Realty, Inc.,* 80 Hawai'i 54, 66, 905 P.2d 29, 41 (1995) (citation, quotation marks, brackets, ellipses points, and emphasis omitted). All of the arguments raised in the Levines' petition and on appeal challenge the validity of an attachment that appears on their TCT to a parcel of property for which they paid $565,000. The amount of the judgment obtained in the underlying action to which the attachment at issue relates far exceeds the amount paid by the Levines for the property. In our view, the Levines clearly have alleged a personal stake in the outcome of the controversy sufficient to demonstrate their standing.

**B.** *The Levines' challenge to the issuance of the writ of attachment was an invalid collateral attack.*

■ In a related argument, the FDIC contends that the Levines' petition to expunge was properly denied because it was an invalid collateral attack on the actions of the circuit court in the underlying contract action.

A collateral attack … is an attempt to impeach a judgment or decree in a proceeding not instituted for the express purpose of annulling, correcting or modifying such judgment or decree. As a general rule, a collateral attack may not be made upon a judgment or order rendered by a court of competent jurisdiction. If it is only a question of error or irregularity and not of jurisdiction, it cannot be raised on collateral attack.

*First Hawaiian Bank v. Weeks,* 70 Haw. 392, 398, 772 P.2d 1187, 1191 (1989) (citations, quotation marks, and brackets omitted). *See also Cooper v. Smith,* 70 Haw. 449, 776 P.2d

---

7. In addition, the Levines argue that (1) the Land Court erred in granting Sentinel's motion for summary judgment because there were genuine issues of material fact regarding whether they took the property free of the attachment because it was improperly indexed and (2) the method of attachment violated their constitutional right to due process. Because we resolve this appeal on other grounds, we do not address these arguments.

1178, *reconsideration denied*, 70 Haw. 662, 796 P.2d 1005 (1989).

We agree that the Levines' challenge to the issuance of the writ of attachment is an improper collateral attack. We disagree, however, with respect to the Levines' challenges to the levy of the attachment and the compliance with the requirements of HRS § 634–29.

### 1. The issuance of the writ of attachment

The Levines challenge the issuance of the writ of attachment on the ground that the bond posted by Sentinel was insufficient. Writs of attachment are issued by the clerk of the court, but they may only be issued "with the approval of the court," HRS § 651–7,—in other words, pursuant to court order. In the instant case, the circuit court issued an order, pursuant to HRS § 651–4, that expressly permitted Sentinel to post a bond in the amount that the Levines now claim was insufficient. Thus, it is evident that the Levines' challenge to the issuance of the writ of attachment is an attack on a court order.

Although HRS § 651–18 (1993)[8] specifically provides for direct challenges to the issuance of a writ of attachment, the Levines are not raising a direct challenge pursuant to this statute.[9] Accordingly, the Levines' challenge to the issuance of the writ of attachment in this case amounts to a collateral attack on a court order.

As a general rule, *see Weeks*, 70 Haw. at 398, 772 P.2d at 1191, a court order may not be collaterally attacked unless the jurisdiction of the court to make the order is challenged; mere questions of irregularity may not be collaterally attacked. The issue thus becomes whether the posting of a sufficient bond is jurisdictional or a question of irregularity.

This court has held that the posting of a sufficient bond is "mandatory." *Nua v. Mahelona*, 23 Haw. 702, 704 (1917). A mandatory requirement, however, is not necessarily "jurisdictional." That the posting of a sufficient bond is mandatory means that the trial court does not have the discretion to permit the plaintiff to post a bond in an amount less than that statutorily required, and that the trial court is required to grant a defendant's application to discharge the writ when the plaintiff has posted an insufficient bond. We do not, however, believe this to be contrary to the proposition that an "attachment is not rendered void by the fact that a bond for less than the requisite amount has been filed; and if the judge . . . erroneously decides that a defective bond is sufficient, such erroneous decision does not go to the jurisdiction to allow the writ[.]" 6 Am.Jur.2d *Attachment and Garnishment* § 520, at 931 (1963).

The purpose of an attachment is to preserve the property of the defendant "as security for the satisfaction of such judgment as the plaintiff may recover" in the event that the plaintiff is successful in the contract action. HRS § 651–2. *See also Calhau*, 26 Haw. at 347. However, at the time an attachment is sought, there has been no determination that the plaintiff has a valid claim against the defendant. Therefore, the plaintiff is required to post a bond, primarily to protect the defendant. *See Metro Rentals, Inc. v. Wagner*, 435 A.2d 1072, 1074

---

8. HRS § 651–18 provides:

**Discharge of writ when improperly issued.** The defendant may at any time after the defendant has appeared in the action, either before or after the release of the attached property, or before any attachment has been actually levied, apply on motion, upon reasonable notice to the plaintiff, to the court in which the action is brought, or to the judge thereof, that the writ of attachment be discharged, on the ground that the same was improperly issued. If upon the application, it satisfactorily appears that the writ of attachment was improperly issued, it shall be discharged.

9. Although HRS § 651–18 only refers to "the defendant . . . in the action," in our view, a nonparty who acquires an interest in property upon which an attachment has been levied may intervene in the underlying action in which the writ of attachment was issued for the purpose of challenging the attachment. *See Metro Rentals, Inc. v. Wagner*, 435 A.2d 1072 (D.C.App.1981). *Cf. Commercial Finance, Ltd. v. American Resources, Ltd.*, 6 Haw.App. 667, 671, 737 P.2d 1120, 1123 (1987) (referring to a related case in which secured creditor was allowed to intervene in an action by plaintiff against the debtor in order to quash the plaintiff's attachment of the security).

(D.C.App.1981) ("Generally, the purpose of requiring an attachment bond is to provide security on which recovery by attachment debtors may be had in the event of improper use of attachment or when damages are sustained by reason of attachment."). Accordingly, pursuant to HRS § 651–4, an attachment bond must be posted on the condition, inter alia,

> that the plaintiff will prosecute the plaintiff's action without delay, and will pay all costs that may be adjudged to the defendant, and all damages which the defendant may sustain by reason of the attachment, not exceeding the amount specified in such bond ..., should the same be wrongfully, oppressively, or maliciously sued out[.]

See also HRS § 651–6 (1993).[10]

 Because an attachment bond is required for the protection of the defendant, we believe that deficiencies in the bond may be waived by the defendant. See First Interstate Bank v. Westcap Forest Products, Inc., 74 Wash.App. 900, 876 P.2d 475, 477 (1994) (holding that right to attachment bond may be waived); Carter Grocery Co. v. Wilson, 156 S.C. 546, 153 S.E. 566, 567 (1930) (holding that defendant waived complaints regarding sufficiency of attachment bond); Darnell v. Johnston, 209 Ky. 95, 272 S.W. 381, 382 (1925) (same); 7 C.J.S. Attachment § 127 (1980). Cf. Moses v. Nobriga, 25 Haw. 483, 490 (1920) ("The defendant has expressly waived the first two grounds which go to the alleged irregularities in the issuance of the writ [of attachment] for the reason that no practical benefit would accrue ... since an execution could now issue on the judgment."). Because jurisdiction may not be waived, see Public Access Shoreline Hawai'i

v. Hawai'i County Planning Comm'n, 79 Hawai'i 425, 431, 903 P.2d 1246, 1252 (1995) ("subject matter jurisdiction may not be waived and can be challenged at any time"), the fact that challenges to the sufficiency of the bond may be waived further indicates that the posting of a sufficient bond is not jurisdictional.

In addition, other courts have similarly concluded that the filing of a sufficient attachment bond is not jurisdictional but only involves an irregularity in the issuance of the writ of attachment. See, e.g., Metro Rentals, 435 A.2d at 1074 ("the filing of a proper bond is not jurisdictional"); Carter Grocery, 153 S.E. at 567 ("As to the question raised concerning the amount of the bond required by the clerk of court in connection with issuing the warrant of attachment (the amount required not being in compliance with the statute), that ... constitutes an irregularity charged.").

 Therefore, we conclude that a challenge to the sufficiency of an attachment bond is not jurisdictional. Consequently, we hold that the Levines' challenge to the issuance of the writ of attachment is an improper collateral attack.

### 2. The Levines' remaining challenges

 The Levines' challenge to the levy of the attachment attacks the actions of the assistant registrar of the Land Court in recording a writ of attachment that was not submitted by a police officer with the officer's certificate indorsed or affixed as required by HRS § 651–9; no order of the circuit court is involved.[11] Similarly, the Le-

---

10. HRS § 651–6 provides:

> **Action on bond.** In an action on the bond a plaintiff may recover, if the plaintiff shows that the attachment was wrongfully sued out, the actual damages sustained and reasonable attorney's fees, to be fixed by the court. If it is shown that the attachment was sued out maliciously, the plaintiff may recover exemplary damages. No action shall be maintained on any bond until after final judgment in the action unless the same is discontinued or dismissed.

11. In essence, this is a direct attack made pursuant to HRS § 501–196 (1993), which provides in pertinent part:

> **Alterations upon registration book prohibited when; court hearings; limitations.** .... Any registered owner or other person in interest may at any time apply by petition to the court, upon the ground that ... any error, omission, or mistake was made in entering a certificate ..., or upon any other reasonable ground. The court shall have jurisdiction to hear and determine the petition after notice to all parties in interest and may order the entry of a new certificate, the entry or cancellation of a memorandum upon a certificate, or grant any other relief upon such terms and conditions, requiring security if necessary, as it may deem proper.

vines' argument that the attachment did not become a lien on their TCT because the requirements of HRS § 634–29 were not satisfied does not involve any circuit court orders. Thus, the Levines' remaining challenges do not attack any orders of the circuit court, and the general rule against collateral attacks is inapplicable.

C. *The attachment must be expunged from the Levines' TCT because the levy of the attachment was invalid.*

 The statutory provisions governing writs of attachment require that the writ be directed to a police officer, HRS § 651–7, and that a police officer levy the attachment, HRS §§ 651–8 and –9. The Levines contend that because a police officer did not record "a copy of the writ of attachment, with the officer's certificate indorsed or affixed" in accordance with HRS § 651–9, there was never an effective levy of the attachment on the subject property.

The FDIC concedes that the requirements of HRS § 651–9 were not strictly complied with, but argues as follows:

> While it might be argued that only a police officer should seize *personal* property to avoid potential breaches of the peace, the same cannot be said of attachments of real property. As this Court established in *Calhau*, the critical element of establishing a lien on real estate is not seizure of the property, but the recording of a true copy of a writ of attachment in Land Court. Delivery of the writ for recording is an action that non-law enforcement personnel can perform without creating the risk of a breach of the peace or otherwise offending the statute's purpose[.]

(Emphasis in original.) Thus, the FDIC essentially contends that the levy of attachment was effective when the messenger delivered the writ of attachment to the Land Court for recordation. We disagree.

 To begin with, "[t]he remedy of attachment is statutory and in derogation of the common law. The requirements of the statute must be complied with to make the

attachment effective." *Lothspeich v. Sam Fong*, 6 Haw.App. 118, 122, 711 P.2d 1310 (1985) (citations omitted). Several provisions in HRS chapter 651 expressly refer to a "police officer" in the context of the levy of the attachment. HRS §§ 651–7 through –11; *see also* HRS § 651–15. Most of these provisions make no distinction between attachments of personal property and attachments of real property, thus failing to support the FDIC's argument that a police officer need not levy the attachment with respect to real property. Moreover, although HRS § 651–9 does distinguish between personal property and real property—requiring personal property to be attached by taking it into custody, HRS § 651–9(2), while requiring real property to be attached by recordation of the writ of attachment, HRS § 651–9(1)—it nonetheless requires both methods of attachment to be performed by "[t]he police officer to whom the writ is directed and delivered." Thus, the plain language of the applicable statutes establishes that the levy of an attachment must be performed by a police officer with respect to both personal property and real property.

Furthermore, although the "risk of a breach of the peace" is diminished when real property is attached, the requirement that a police officer perform the levy of attachment serves other purposes. *See, e.g.,* HRS § 651–11 (1993).[12]

Finally, we note that the FDIC has not cited any case in which an attachment levied by someone other than a police officer was held to be valid. In fact, in the case that the FDIC cited in support of its argument that a police officer is not required to perform the levy of the attachment of real property because "the recording of a true copy of a writ of attachment" is the "critical element," this court stated that "the levy of the attachment was complete when *the sheriff* filed a copy of the writ with his certificate indorsed thereon in the office of the registrar of conveyances." *Calhau*, 26 Haw. at 347 (emphasis added).

---

12. HRS § 651–11 provides:
 "**Execution in order of receipt.** Where there are several attachments against the same de-
 fendant, they shall be executed in the order in which they are received by the police officer."

Thus, we hold that the attachment was never properly levied and should not have been noted on the TCT to the subject property. *See Cape Cod Bank & Trust Co. v. Avram,* 697 F.Supp. 8 (D.D.C.1988) (purchaser who bought property after writ of attachment had been issued by court but before the attachment was "perfected" on the property, took free of the attachment); *Jack Development, Inc. v. Howard Eales, Inc.,* 388 A.2d 466 (D.C.App.1978) (same). Consequently, the attachment must be expunged from the Levines' TCT.[13]

## IV. *CONCLUSION*

For the foregoing reasons, we vacate the judgment of the Land Court, and remand for entry of an order directing the registrar to expunge the attachment from the Levines' TCT to the subject property.

**13.** Based on our resolution of this issue, we need not decide whether Sentinel failed to comply with HRS § 634–29 and/or HRS § 651–15, and what effect non-compliance, if any, would have had if the attachment had been properly levied.